The Buffalo B. S. C. Co. v. Milby & Dow.

(Case No. 1778.)

1. DAMAGES — SHIP CHANNEL. — The Buffalo Bayou Ship Channel, or cut across Morgan's Point, owned and controlled by the Buffalo Bayou Ship Channel Company, is a public highway for the passage of vessels, subject to the right of the company to collect tolls. The character of that channel being such as to require the agency of tugs to carry vessels through it, any wrongful refusal of the company to permit a tug engaged in the effort to carry a vessel laden with merchandise through said channel, whereby damage results to the owner of vessel and cargo, is such a proximate cause of the damage as to enable such owner of the vessel and cargo to maintain an action against the company.

2. SAME.— When the natural and proximate result of the wrongful refusal of the company to permit a tug to pass through its cut or channel, in order to get access to and to tow a vessel up to and through said channel, is to cause the detention of the loaded vessel and compel the discharge of her freight by lighters, whereby damage results, such damage may be recovered from the company.

3. DISTINGUISHED.— This case distinguished from Denny v. N. Y. C. R. R. Co., 13 Gray, 481; and Daniels v. Ballantine, 23 Ohio St., 532.

4. SAME — PAYMENT OF TOLLS.— No obligation rested upon the owner of the vessel and cargo to pay a past indebtedness from the owner of the tug,to the company, payment of which was demanded by the company as the condition on which the tug would be permitted to pull the vessel through the channel.

APPEAL from Harris. Tried below before the Hon. James Masterson.

Appellees, as coal merchants, shipped a cargo of coal by the schooner Hunter, from Baltimore to Harrisburg on Buffalo Bayou, and in order to get to the latter place they were accustomed to bring their vessels up that bayou, and through the cut or canal across Morgan's Point. The petition charged that about the 27th of February, 1883, they attempted to bring said schooner and other vessels loaded with coal through the canal, and were illegally prevented by the appellant from doing so, and that they were thereby damaged $312 in the delay of the Hunter thirteen days, for which they were compelled to pay a demurrage of that amount, and $200 by having to lighter her and transport the coal around through the old or Clopper's Bar channel at an expense of $150 to the lightering schooners, and $50 for laborers. They also sought $5,000 exemplary damages. The defendant company pleaded the general issue, and specially that the canal or cut across Morgan's Point was its own private enterprise, through which plaintiffs and the public had the right to pass, only upon payment of the tolls, and under the rules and regulations of the company; that the tug Protection was attempted to be passed through without paying the proper tolls, and the tolls already due, which she had continuously and repeatedly refused to pay; that defendant did not refuse passage to any of plaintiffs' boats, and that any delay suffered by plaintiffs or any damage paid by them, or lightering done by them, was from causes with which it had no connection. Plaintiffs replying, excepted to so much of the answer as set up the right to demand toll, on the ground that so much of its charter as granted that right was in violation of the constitution of the United States, which exception was overruled. They excepted to the allegation of the indebtedness of the Protection, which exception was sustained. They then denied the allegations of the answer.

The defendant by trial amendment alleged that the tug Protection was not, at the time stated in the petition, owned or controlled by plaintiffs, but by one John Dullahan, who, with said tug, owed tolls, which he refused to pay, and that the plaintiffs had never been refused the use of the channel on payment of the proper toll, and it had no notice and did not know that they wanted to pass the Protection through the cut, no application to do so having been made by any one except said Dullahan. Plaintiffs replied to this that they at that time controlled and were in possession of the Protection, but were not liable for the indebtedness of Dullahan for

tolls, no demand for which had been made on them or on Dullahan. They denied the indebtedness. Judgment for $300 for plaintiffs.

*Hutcheson & Carrington*, for appellant, that the charges of the court were erroneous, cited: Hutchins v. Masterson, 46 Tex., 551; H. & T. C. R'y Co. v. Nixon, 52 Tex., 26; Anthony v. Slade, 11 Metc., 290; Dale v. Grant, 34 N. J. L., 142; 39 Me., 253; Jemmison v. Gray, 29 Iowa, 537; Sutherland on Damages, pp. 49, 51, 55, 56; Ashly v. Harrison, 1 Esp., 48; Cooley on Torts, pp. 68, 70, note 1; Marble v. Worcester, 4 Gray, 395; Vedder v. Hildreth, 2 Wis., 427; Daniels v. Ballantine, 23 Ohio St., 532; 13 Gray, 481; 11 Pick., 527.

*Stewart & Breaker*, for appellees, cited: Cooley on Torts, pp. 69, 70; art. 1, sec. 8, clause 3, Constitution U. S.; id., art. 1, sec. 10, clause 3; Cannon v. New Orleans, 20 Wall., 577; Inman Steamship Co. v. Tinker, 94 U. S., 238; Peete v. Morgan, 19 Wall., 581; State Tonnage Tax Cases, 12 Wall., 204; Steamship Co. v. Port Wardens, 6 Wall., 31; Henderson v. The Mayor, etc., 92 U. S., 259; Cooley v. Board of Wardens, 12 How., 299; Gibbons v. Ogden, 9 Wheat., 203; City of New York v. Miln, 11 Pet., 102.

WALKER, P. J. Com. App.— The first ground assigned as error is that the court erred in charging the jury that the defendant had no right to prevent a vessel, chartered or hired by plaintiffs to transport their coal, from passing through said cut, in order to enforce the collection of a debt due by said vessel or the owner thereof, when no part of said indebtedness accrued after plaintiffs had so hired or chartered said vessel.

The evidence shows that the tolls which were in arrear, owing by Dullahan, amounting to nearly $100, as shown by an itemized account for toll fees running from March 30, 1881, to February 25, 1883, inclusive, embracing two items for passing through, of $2.10 each, since the contract was made between the plaintiffs and Dullahan, constituted the indebtedness for tolls claimed by the defendant, for the non-payment of which the latter refused to allow the vessel, supposed to be chartered as above stated, to pass through the cut owned and controlled by the defendant. The charge given was applicable to the state of case above indicated. The objection urged under this assignment is that the court ought not to have assumed as a fact proved "that no part of said indebtedness accrued after plaintiffs had hired or chartered said vessel." Evidently the trifling amount of tolls due to defendant after said con-

tract of hiring was entered into was not the subject of controversy between the defendant and Dullahan, but it embraced the entire indebtedness, and it was quite immaterial whether the court made a discrimination in this branch of the charge so as to eliminate the two small items from the whole account, and give a special charge qualifying, if necessary, the rule of law as it might apply to them in this connection or not. The defendant refusing to allow the vessel in question to pass without paying the whole amount of the entire account, it could make no difference in the practical application of the law of the case, whether a fragmentary portion of it had accrued at one time or another; it was sufficient that the defendant refused to allow the vessel to pass, for back charges which had accrued before the plaintiffs had chartered the vessel, and that their non-payment caused the delay. If there was error, and we do not intimate that there was, in giving the charge in the form stated, it was abstract error, and it could not have injuriously affected the defendant. The charge was appropriate to the evidence under the phase of the case above indicated, and if the defendant desired to have presented a proposition of law adapted to another phase as applied to the evidence in regard to the items of indebtedness which had accrued after plaintiffs had chartered the vessel or engaged the services of Dullahan (as the case may be), it should have asked instructions of the court. H. & T. C. R. R. Co. v. Nixon, 52 Tex., 26.

It is assigned as error that the court erred in refusing to give defendant's instruction to the effect " that the refusal by defendant to permit Dullahan, with the tug Protection, to use its channel (if you find that such was the case), furnished no cause of action to the plaintiffs, but was a matter personal to said Dullahan himself, unless, at the time of such refusal, said tug was owned by plaintiffs, or then held and controlled by them; and such holding and control must have been other than a mere personal contract with said Dullahan to tow vessels for them, and to lighter the Hunter for them."

This proposition involves the application of the law as to immediate and consequential damages. It is elementary that where the damage resulting from the act of another is too remote, or, in other words, flows not naturally, legally and with sufficient directness from the alleged injury, the plaintiff will not be entitled to recover damages. 2 Wait's Act. & Def., 440. The question here is, Are the damages, under the facts of this case, too remote to entitle the plaintiffs to complain, even though Dullahan might be entitled to maintain an action therefor?

The relation which the plaintiffs and the defendant occupy to the

subject-matter out of which arises the damage must, we think, enter as an important element in determining the question presented.

This water channel or cut, owned and controlled by defendant under its charter from the state, was a public highway for vessels, beyond question; and as such the owners of all vessels had a right to regard and to treat it, using it at their pleasure, subject to the lawful conditions imposed upon them therefor. A toll-bridge, built in pursuance of an act of the legislature, is a public highway. Thompson v. Matthews, 2 Edw. (N. Y.), 212. Manifestly this ship channel was so, too.

The plaintiffs had the right, therefore, to employ vessels, load them, and engage all necessary employees with their tugs and lighters, relying upon the duty of the defendant to permit their vessel thus freighted, with its attending convoy of tug-boats and lighters, to pass through the channel unobstructed on the payment of the legal charges. Such privity of relation and *status* as this existed between the defendant and the plaintiffs, as it did towards all shippers by vessels desiring to use the channel.

If the defendant contravenes his duty thus to allow the plaintiffs to use this public highway by virtually obstructing it, without lawful excuse, the damage thus caused is proximate and direct, as contradistinguished from a damage that is remote and consequential and indirectly ensues by reason of an incidental wrong which in the same transaction may have resulted to a third party. The defendant's act in refusing to allow the vessel of Dullahan to pass through is the proximate cause of plaintiffs' damage; it was the act whereby the plaintiffs' vessel was delayed. The nature of the channel is such that it seems to contemplate the necessity of the agency of tugs to carry vessels through it, and if the tug is refused admittance it is in effect a barrier to the entrance of the plaintiffs' vessel. Such refusal of the tug is not an act that indirectly and consequentially has the effect in a collateral way to result in plaintiffs' inability to pass their vessel through, but it operates immediately and directly to that result. The tug is the propelling power of the plaintiffs' laden vessel — a part of it, as it were, — and to refuse entrance to the tug is to deny the plaintiffs' right of use of the highway in question. The act, therefore, thus causing the injury is the direct natural cause of the damage, which flows immediately from it as a result.

The brief of appellants' counsel cites in support of this assigned ground of error, 1 Sutherland on Dam., 55, where it is laid down that "where the plaintiff sustains injury from the defendant's conduct to a third person, it is too remote, if the plaintiff sustains no

other than a contract relation to such third person, or is under contract obligation on his account, and the injury consists only in impairing the ability or inclination of such third person to perform his part, or in increasing the plaintiff's expense or labor of fulfilling such contract, unless the wrongful act is wilful for that purpose." The correctness of this doctrine is not questioned in the view we have taken. We conceive that this case does not rest nor depend upon the idea of damages incidentally resulting to plaintiffs by reason merely of any supposed injury the defendant may have committed on Dullahan, but are so far independent of it that the injury supposed is a direct one to plaintiffs, although Dullahan may have been the medium through which it was inflicted, and even though he may have been a victim or subject of the same wrong.

The fifth and ninth assigned errors are submitted in connection in the brief of appellants' counsel, and are as follows:

5. "The court erred in refusing the special charge No. 3 asked by the defendant, to the effect that, under the facts of this case, the damage, if any, paid by plaintiffs to the schooner Hunter, and the lighterage paid by them, if any, were elements of damage too remote from defendant to render it liable."

9. "The verdict and judgment are unsupported by the testimony, in this, that the damage to plaintiffs is too remotely connected by the testimony with the defendant, or any acts done by it, to warrant a finding against it in plaintiffs' favor, although the damage claimed to have been suffered by plaintiffs may be the direct result of the delay occasioned by the stoppage of the coal schooner Hunter in Galveston Bay near Red Bluff; the circumstances and contingencies intervening between this stoppage of the Hunter, and any acts of the defendant to or touching plaintiffs or said delay, are too many and too uncertain to warrant a recovery against the defendant."

It may be conceded that there was evidence in behalf of the defendant which, if accepted by the jury as satisfactory proof of the existence of facts of a character which rendered it a matter of speculation and doubt, if not, indeed, even wholly impracticable, to have taken the schooner Hunter through the ship channel irrespective of the defendant's action in causing the delay by refusing admittance to the tug Protection, would have made a case for the defendant of damages too conjectural and speculative to have entitled the plaintiffs to recover. But there was counter evidence on that subject, which, although conflicting with the evidence just referred to, may have satisfied the jury to the reverse conclusion,

showing that the vessel in question could and would have been carried through the channel but for the defendant's refusal complained of.

Dullahan testified that he left the Hunter about twenty-five miles from the defendant's channel or cut across Morgan's Point; that it was necessary to stop her there on account of a norther then blowing, which has the effect, by blowing the water out of the bay, to render it, consequently, shallow. The succeeding day the Hunter was left by him aground. He passed through the channel with his tug, the Protection, under the protest of Spann, defendant's agent, who demanded payment of his account as the condition of being allowed to pass. After unloading the barges at Harrisburg, he returned on the night of the 27th of February, on his way to the Hunter, and the same refusal was made on the same conditions as before, and the passage having been by defendant successfully blockaded with a barge and a chain across the channel, he was unable to pass through, and he stated that owing to which he was unable to get down to the Hunter to tow her up. The barges Ark and Hard Times proceeded to make their trip to the Hunter by sailing around by Clopper's Bar without going through the channel, loading from the Hunter, and transferring the loads thus obtained to Harrisburg by the same route. Witness stated that his tug, the Protection, could not go around by Clopper's Bar except on a very high tide, and could not have done so on that occasion. That the mean depth of the water from where he left the Hunter to the Morgan's Point cut is about ten feet; that the Hunter drew about ten and a half, but she could have been easily sufficiently lightered, if necessary, to pull her through, the norther that had been blowing having ceased. That if he had been allowed to have gone down and brought the Hunter up, he could have saved at least ten days' time, and the cost of the second trips of the Ark and the Hard Times, $85 and $50.

Witness Hooker, the captain of the Ark, testified that on the return of the Ark from Harrisburg to the Hunter, she was found in the channel (bay channel) and afloat; on the 28th February a vessel of her draught could not be got out of the channel. He stated that the Hunter could have been pulled to the cut and to Harrisburg in about two days. That Dullahan and himself sounded the channel on Sunday, the 25th February, after they left the Hunter, and found about nine and a half feet of water in shallowest places. That Dullahan could have got the Hunter to Harrisburg within two days; could have unloaded in two and a half days, and she could

have gone back to Galveston in one day. That the Hunter could not have sailed through the cut, but would have to be towed through. Witness thinks the Hunter was delayed about ten days in consequence of the refusal to allow the Protection to go through the cut. States that the channel around by Clopper's Bar has only about four or four and a half feet of water in it.

There was full and explicit evidence in behalf of defendant to show that it was impracticable, from the relative draught of the vessel, compared with the shallowness of the bay channel, for the Hunter to have been gotten through. The jury having adopted, in effect, the conclusions resulting from the evidence in behalf of the plaintiffs, we think that it showed a case for damages as being not too remote. If the Hunter could have been brought to the ship channel, the cost and expense of lighterage, and the incident cost and expense of the delay of the vessel, was proximately caused by the refusal to allow the tug to pass through to her and to tow her through to Harrisburg.

The rule is that "the defendant's misconduct must be the efficient cause, and the injury which follows must be such as ought to have been foreseen as a probable consequence in the light of surrounding circumstances." 1 Sutherland on Dam., 48. We think the case falls properly under the discrimination indicated by the rule. The damage resulted from the act of the defendant according to the ordinary course of events, and was a proximate result from a sufficient cause. Cooley on Torts, p. 69.

The cases cited by appellants' counsel (Marble v. Worcester, 4 Gray, 395; Vedder v. Hildreth, 2 Wis., 427; Daniels v. Ballantine, 23 Ohio St., 532; Denny v. N. Y. C. R. R. Co., 13 Gray, 481) do not militate with our view as we have expressed it. In certain of the cases cited the cause of damage relied on was delay unnecessarily experienced in the course of a voyage, but for the occurrence of which the injury would not have been sustained by reason of a storm which overtook the vessel. In another of the cases the negligent delay of a railroad company in transporting goods occasioned injury to them by reason of a flood while they were in the railroad's depot, to which accident they would not have been exposed but for the delay. In both cases it was held that the delay was a cause too remote on which to found a claim for damages; that the proximate cause was the storm in the one case, and the flood in the other. The other cases cited are equally as plainly distinguishable from this as are the two cases just quoted, viz., Denny v. N. Y. C. R. R. Co. and Daniels v. Ballantine, *supra*.

The true rule on this question is well discussed and stated in the case of Fairbanks *v.* Kerr, 70 Pa. St., 86. The doctrine there laid down was that, as a general rule, one is answerable for the consequences of his fault only so far as they are natural and proximate, and may, therefore, be foreseen by ordinary forecast; not for those arising from a conjunction of his fault with circumstances of an extraordinary nature. Its application arose on the case where a man mounted a pile of flagstones in a street to make a public speech; a crowd of hearers gathered about him, some of whom also got on the stones and broke them; and it was held that, although it was not a legal conclusion that the speaker was liable for the breaking of the stone by the by-standers, yet that it was a question for the jury whether the defendant's making the speech in the street was the proximate or remote cause of the injury. The question, remarked the court in the opinion, was a fact dependent on all the circumstances. Applying this rule to this case, it is apparent, we think, that the natural and proximate result of refusing the tug Protection to pass through to the schooner Hunter was to cause the detention of the latter, and to induce the necessity of discharging her load by means of lighters used for that purpose.

There is evidence in the case to show that Atkinson, defendant's superintendent, under whose orders Dullahan's tug was refused passage through, knew that Dullahan had been employed by the plaintiffs to tow the Hunter up to Harrisburg; that he himself wanted to obtain that job for his company, and that he depreciated Dullahan to the plaintiffs in his attempted negotiations to get the contract, as being an unreliable man, and threatened that he would " tie up Dullahan's tug." (Atkinson, however, disclaimed on the stand having made such a threat.) This evidence tends to show that the defendant's refusal of Dullahan was made with a knowledge of the fact that the tug was attempting to pass through to the Hunter with a view of towing her to her destination. If the defendant thus knew that fact, it is obvious, from the exercise of ordinary forecast, that the probable and immediate consequence would be the delay of the Hunter, and the necessity of lightering her unless the Hunter might otherwise be brought through the channel than by the agency of the Protection. No other means to accomplish that purpose appear from the evidence to have been within the control of the plaintiffs; neither the Protection nor the Hunter could pass around by Clopper's Bar for want of sufficient water, and all that was left as an alternative was to seek for and obtain another tug, or else for the Protection to comply with defendant's condition of paying over

$100. The schooners Ark and Hard Times were at command, and they were used at once to relieve the Hunter from her loading, and it does not appear that there was any cheaper or more expeditious manner to be adopted for meeting the exigency than that which was acted on.

Under these circumstances the defendant would be held to have had reason to have contemplated that such damages would ensue to the plaintiffs as did follow from the refusal to allow the tug Protection to pass through its channel on its way to the Hunter. The defendant's liability grows out of its implied contract towards the plaintiffs as controlling a public highway by water for the use of vessels, and the measure of the damages arising from its breach should, it should seem, constitute no exception to the ordinary rule that where the parties, at the time of making a contract, contemplate or had reason to contemplate particular losses and more remote damages from the delay, that such may be recovered for its violation. See Field on Dam., secs. 375 and 252 *et seq.;* Jones *v.* George, 61 Tex., 355; Calvit *v.* McFadden, 13 Tex., 326; 13 La., 401; De La Zerda *v.* Korn, 25 Tex. Sup., 188; Gordon *v.* Jones, 27 Tex., 620; and see Silver *v.* Frazier, 3 Allen, 385; citing Langridge *v.* Levy, 2 Mees. & W., 519.

The eleventh assigned error is that "The judgment is contrary to the law and the evidence in the case, because plaintiffs could not, by the refusal to pay the tolls demanded, invite damage to themselves and charge the same to the defendant." The rule of law which is probably relied on under this proposition is that "it is the duty of a person to use ordinary and reasonable care and means to prevent an injury and the consequences of it. And he can only recover damages for such losses as could not by such care and means be avoided."

Instances for the application of this principle arise generally in cases where the injury sustained is associated with some fault or act of the plaintiff connected with the act complained of, which is culpable or else is in the nature of a contribution by the plaintiff's negligence to the injury suffered, or which has aggravated the degree and extent of it. No duty was imposed upon the plaintiffs to pay Dullahan's account of more than $100 as the condition of passing through defendant's channel, and it cannot be fairly said that their failure to do so, without proper security for reimbursement, was an act chargeable against them as showing a want of ordinary and reasonable care and means to prevent the injury complained of and the consequences of it. See Texas & St. Louis R. R. Co. *v.*

Young, 60 Tex., 203, 204. The further non-action on the part of the plaintiffs after the defendant's refusal of Dullahan in not paying Dullahan's debt was no fault or act of negligence on their part, and in no proper legal sense can it be deemed to have "invited damage to themselves."

We conclude that the judgment ought to be affirmed.

AFFIRMED.

[Opinion adopted March 13, 1885.]