STATE OF FLORIDA, *ex rel.*, THOMAS F. WEST, ATTORNEY GENERAL, *Relator*, v. FLORIDA COAST LINE CANAL AND TRANSPORTATION COMPANY, A CORPORATION, *Respondent*.

Opinion Filed May 10, 1917.

1. A canal for public use, constructed and operated by a corporation authorized by its charter or by the statutes of the State to charge tolls for the use of its canal, to construct and oper-

VOL. 73, JANUARY TERM, 1917.    · 1007

State ex rel. v. F. C. Line Canal Trans. Co.—Syllabus.

ate the same as a part of. the navigable waters of the State, receiving grants of land from the State to aid it in effecting the public purposes of its formation, with the right of eminent domain, is a navigable public highway for the transportation of persons and property.

2. A canal forming a navigable public highway, is subject to the right and duty of the government to regulate it in a proper manner.

3. The duties of a Canal Company to construct and maintain its canal, forming a navigable highway, may arise either from express statutory requirements or by implication of law from authority permitting the use of the special franchises and privileges granted to, and exercised by such a company, and the undertaking to serve the public; and the acceptance or exercise of the rights carries with it the duty of properly rendering the public service undertaken.

4. After a Canal Company has elected to proceed and exercise special rights, privileges and franchises delegated to it by the sovereign power, by constructing its canal, operating it for public use, accepting large grants of land from the State to aid it in effecting the public purposes and objects of its formation, then the duty of keeping and maintaining its canal and waterways in an adequate and proper manner attaches, from the performance of which it cannot be released except by due process of law.

5. A canal, constituting a navigable public highway, thrown open for navigation to all upon the payment of a fixed toll, should be available at all reasonable times for public use with safety and convenience.

6. The existence and extent of a chartered Canal Company's privileges and franchises and of its resultant duties and obligations must be determined by reference to the particular law or charter creating it and such valid statutory provisions as may relate thereto.

7. A Canal Company, owning and operating a canal, forming a navigable public highway devoted to public service, and exercising special rights, privileges and franchises delegated to

it by the sovereign power, is charged with the duty of exercising ordinary and reasonable care to maintain the canal and waterways operated and controlled by it according to the dimensions and of the capacity required by its charter and the statutes of the State, prescribing particular specifications, applicable thereto; and the performance of such duty may be enforced by mandamus in a proper case, upon the relation of the Attorney General, when the allegations of the alternative writ are sufficiently specific and there is no other adequate remedy afforded by law.

8.  The ordinary office of the writ of mandamus is to coerce the performance of single acts of specific and imperative duty. The court will not undertake to compel the performance of a series of continuous acts where it is impossible for it to furnish that superintendence, without which its mandate becomes nugatory.

9.  The commands of a peremptory writ of mandamus must strictly follow and conform to those of the alternative writ, and unless they do so, such peremptory writ will be refused.

10. When a peremptory writ of mandamus is issued, it is to be obeyed and a certificate showing obedience is required to be made by respondent and filed in the cause.

11. Great care, particularity and certainty are required in the preparation of the mandatory part of the alternative writ of mandamus. It should conform to the recitals in the writ, and must not require more to be done than is justified by such recitals.

12. General allegations in the recitals of an alternative writ of mandamus alleging that respondent has failed to maintain its canal and waterways according to certain prescribed specifications and as required by law, are limited by the particular defaults alleged as existing at and between definite points along said waterways, as when both general and special allegations are made in the same pleading respecting the same subject matter, the latter control.

13. When the allegations in the recitals of an alternative writ of mandamus as to a specific default and breach of duty are

confined to designated parts only of such waterway, and the mandatory part of such writ applies to the waterway as a whole, such writ is defective in that its mandatory part requires more to be done than is justified by its recitals.

14. Questions not properly raised or presented by the pleadings will not be considered or determined by the court on a motion to quash an alternative writ of mandamus.

15. The range of action required of the respondent by an alternative writ of mandamus should be clearly, particularly and specifically set forth in the mandatory part of such writ. The duty commanded should not be left to indiscriminate or indefinite outside ascertainment dehors the writ.

16. The alternative writ in mandamus proceedings stands as the pleading on the part of the relator, and, if too much is asked, respondent may show this as a sufficient cause for not complying with the mandate of the writ.

17. The mandatory part of the writ of mandamus must be enforced in its entirety, and when a motion to quash the alternative writ is made and it appears from the face of such writ that relator is not entitled to have the order enforced as a whole, the motion to quash should be granted, with leave to relator to amend such writ, if he shall be so advised.

Motion to quash granted unless writ amended.

## Statement.

On an application by the State on relation of Thomas F. West, Attorney General, for a writ of mandamus, to the Florida Coast Line Canal and Transportation Company. Motion to quash granted on condition.

The alternative writ issued in this case, January 31, 1917, is as follows:

64

"The State of Florida
        To
Florida Coast Line Canal and Transportation Company,

"GREETING:

"Whereas, By petition filed in this our Supreme Court of the State of Florida, wherein the State of Florida upon the relation of Thomas F. West as Attorney General, who sues for the State of Florida, and for the people of the State of Florida, is the Relator, and Florida Coast Line Canal and Transportation Company, a corporation organized under the laws of the State of Florida, is Respondent, it has been made to appear:

"That the relator, Thomas F. West, is the duly elected, commissioned and acting Attorney General of the State of Florida, and the respondent, Florida Coast Line Canal and Transportation Company, is a corporation, organized as a canal and transportation company under the laws of the State of Florida and particularly Chapter 1987 of the Acts of 1874, entitled 'An Act to Provide a General Law for the Incorporation of Railroads and Canals,' as amended by Chapter 3166 of the Acts of 1879, Laws of Florida, by which amendment aid from the State in the way of grants of land was authorized and given to railroad and canal companies incorporated under said act, copies of the articles of association of said respondent corporation with the amendments thereto on file in the office of the Secretary of State being hereto attached marked exhibits 'A-1,' 'A-2,' 'A-3,' and 'A-4,' and made a part hereof.

II.

"That respondent owns and pretends to maintain for public use in the carrying of passengers and property by

vessel and other water craft a certain canal composed of artificial and natural waterways paralleling the east coast of Florida and lying wholly within the State of Florida and extending from the St. Johns River on the north, beginning at the point where Pablo Creek enters the St. Johns River, thence in a southerly direction by canal to North River, thus connecting the navigable waters of St. Johns River with the navigable waters of North River; thence in a southerly direction through North River into Matanzas River; thence through Matanzas River and in a southerly direction by canal from Matanzas River into and through Smith's Creek and Halifax Creek to Halifax River, thus connecting the navigable waters of Matanzas River with the navigable waters of Halifax River; thence in a southerly direction through Halifax River and various canals, cuts and excavations into the navigable waters of Mosquito Lagoon, thus connecting the navigable waters of Halifax River with the navigable waters of Mosquito Lagoon; thence in a southerly direction through Mosquito Lagoon to the narrow strip of land separating Mosquito Lagoon from Indian River; thence by canal through said strip of land into the waters of Indian River, thus connecting the navigable waters of Mosquito Lagoon with the navigable waters of Indian River; thence in a southerly direction through the Indian River by various excavations, cuts and canals into Peck Lake; thence in a southerly direction through Peck Lake, South Jupiter Narrows, Hobe's Sound, Jupiter Sound, Lake Worth Creek and various excavations, cuts and canals into Lake Worth, thus connecting the navigable waters of Indian River with the navigable waters of Lake Worth; thence in a southerly direction through Lake Worth to its southern shore; thence in a southerly direction from Lake Worth by canal into and through Hillsborough River, Lake Mabel and various excavations, cuts

and canals into Biscayne Bay, thus connecting the navi-·
gable waters of Lake Worth with the navigable waters of
Biscayne Bay, thereby providing and affording a navi-
gable inland waterway from Jacksonville to Miami, the
location of said canal and waterway being indicated gen-
erally by a dotted line on the map of the State of Florida,
copy of which is hereto attached marked Exhibit 'B,' and
made a part hereof, but more accurately by a blue print
of an actual survey of said canal, copy of which is also
hereto attached marked exhibit 'C' and made a part
hereof.

### III.

"That although said respondent was authorized by its
articles of association to extend said canal southward to
Key West, this was never done, and the southern termi-
nus of said canal and waterway is Biscayne Bay.

### IV.

"That in addition to cutting and maintaining the
canals authorized and necessary for the purpose of con-
necting the waters of the natural streams and providing
and affording· navigation to the public, the said respond-
ent was and is authorized and required to remove all
shoals, oyster banks or other obstruction to the complete
navigation of said waterway from the St. Johns River on
the north to the Biscayne Bay on the south, to the end
that a channel of the dimensions fixed and prescribed by
the specifications for said canal hereinafter referred to
for the entire length of the said waterway may be af-
forded and a safe and inexpensive means of transporta-
tion for the people of the State thereby provided and
maintained.

## V.

"That the State of Florida, in order to aid financially in the construction of said canal, by Chapters 3166 of the Acts of 1879, Laws of Florida; 3641 of the Acts of 1885, Laws of Florida, and 3995 of the Acts of 1889, Laws of Florida, did grant and thereby authorize and direct the Trustees of the Internal Improvement Fund of the State of Florida to convey to said respondent large acreages of land held by said State lying adjacent to the line of said canal, and in pursuance of said authority and direction the said Trustees of the Internal Improvement Fund did, from time to time, make conveyances of the land so granted to said respondent until the aggregate acreage so granted and conveyed to said respondent by the State of Florida for said purpose was 1,031,128 acres.

## VI.

"That in addition to the land grant to said respondent contained in Chapter 3995 of the Acts of 1889, Laws of Florida, for the purpose of aiding and facilitating the construction of said canal and thus affording transportation to the people of the State, specifications for said canal were prescribed by the legislature, and it was therein provided that the said canal and waterway of said respondent should be not less than 50 feet wide and not less than 5 feet deep at mean low water for the entire distance of said canal, and that it should be so maintained by said respondent; and it was provided in said act that no conveyance of any lands reserved for that purpose should be made by the Trustees of the Internal Improvement Fund to said respondent for any portion of the said canal and waterway between St. Augustine and Biscayne

Bay which should remain uncompleted in accordance with such specifications at the end of five (5) years from the first day of June, A. D. 1889; and it was further provided in said act that said respondent should accept the provisions thereof within sixty (60) days after it had been approved by the Governor and should file a notice of such acceptance with the Trustees of the Internal Improvement Fund, which acceptance should be held to constitute a contract between the State of Florida and the said respondent in accordance with the provisions of said act. And this relator, for and on behalf of said State of Florida, avers that said respondent did accept the provisions of said act and did file a notice of its acceptance as therein required to be filed with the Trustees of the Internal Improvement Fund, a copy of which acceptance is hereto attached marked exhibit 'D' and made a part hereof.

## VII.

"That thereafter, by Chapter 4284 of the Acts of 1893, Laws of Florida, the time for the completion of said canal according to said specifications was extended for four (4) years from the 1st day of June, A. D. 1893, and said extension and the conditions thereof were accepted by said respondent as required by said act and notice of such acceptance was filed with the Trustees of the Internal Improvement Fund as therein required, a copy of such notice being hereto attached marked Exhibit 'E-1' and made a part hereof; that thereafter, by Chapter 4623 of the Acts of 1897, the time for the completion of said canal, according to said specifications, was extended to the 1st day of January, A. D. 1898, and said extension and the conditions thereof were accepted by said respondent as required by said act and notice of such ac-

VOL. 73, JANUARY TERM, 1917.    1015

State ex rel. v. F. C. Line Canal Trans. Co.—Statement of Case.

ceptance was filed with the Trustees of the Internal Improvement Fund as therein required, a copy of such notice being hereto attached marked Exhibit 'E-2' and made a part hereof; that thereafter, by Chapter 4846 of the Acts of 1899, Laws of Florida, the time for the completion of said canal, according to said specifications, was extended for four (4) years from the 1st day of January, A. D. 1899, and said extension and the conditions thereof were accepted by said respondent as required by said act and notice of such acceptance was filed with the Trustees of the Internal Improvement Fund as therein required, a copy of such notice being hereto attached marked exhibit 'E-3' and made a part hereof; that thereafter, by Chapter 5279 of the Acts of 1903, Laws of Florida, the time for the completion of said canal, according to said specifications, was extended to the 1st day of June, A. D. 1905, and said extension and the conditions thereof were accepted by said respondent as required by said act and notice of such acceptance was filed with the Trustees of the Internal Improvement Fund as therein required, a copy of such notice being hereto attached marked exhibit 'E-4' and made a part hereof.

.VIII.

"That notwithstanding the liberality of said State to said respondent, as evidenced by said donation of more than one million (1,000,000) acres of land for the purpose of aiding in the construction and maintenance of said canal and the apparently almost inexhaustible patience of the said State, evidenced by the granting of said several extensions of time for the completion of said canal according to said specifications, the said respondent had not completed said canal at the expiration of the period covered by the last extension, that is to say, on

June 1, 1905, whereupon the said Trustees of the Internal Improvement Fund refused to convey to said respondent large acreage of land claimed by it under said legislative grants, the title to which was held by said Trustees as hereinbefore stated.

## IX.

"That thereafter, on December 1, A. D. 1906, a contract was entered into between said Trustees of the Internal Improvement Fund and the said respondent, wherein it is recited that it is recognized by the parties thereto that great benefits would accrue to the State by the completion of the said canal to the St. John River in the drainage and reclamation of lands, the increasing of tax values, the furnishing of transportation facilities to a large portion of the east coast of Florida, as well as enhancing the value of said canal as a transportation line to said company and to the public, and it was agreed by said company in said contract that it would complete said canal according to said specifications; that it would cut and construct that portion of said canal from St. Augustine to the St. Johns River according to said specifications and as originally proposed and authorized but not theretofore constructed, and that it would pay over to said trustees the sum of Fifty Thousand Dollars ($50,000), in consideration of which and in consideration of the work of said respondent in draining and reclaiming certain swamp and overflowed lands through which said waterway would run, the Trustees agreed to convey to said respondent the lands claimed by it to have been earned under said grants of the Legislature of the State, a copy of which said contract is hereto attached marked exhibit 'F' and made a part hereof.

## X.

"That said contract was substantially carried out and performed by the parties thereto and the said canal was regarded by them as completed according to said specifications, and on the 23d day of November, A. D. 1912, the last deed to be delivered to said respondent in compliance with the terms and conditions of said contract was delivered to and accepted by it.

## XI.

"That thereupon it became and is the legal duty of said respondent under said several contracts, as well as under the law prescribing the public duties of transportation lines and carriers of the character of this respondent, to maintain said canal and waterway at all times and at all points on and along said canal and waterway according to the specifications prescribed and fixed by said statute, that is to say, it was and is the legal duty of said respondent to maintain said canal at a width of not less than 50 feet and a depth of not less than 5 feet at mean low water for the entire distance of said canal from its intersection with said St. Johns River on the north to Biscayne Bay on the south, and said relator says that unless said canal is so maintained it will serve no useful purpose to the public, transportation for the people of the State of Florida by boat, vessel and other craft on said waterway will not be afforded, the intent and purpose of the State in aiding in the construction and maintenance of said waterway as hereinbefore stated will be defeated and said respondent will escape from and be relieved of the duty imposed upon it by law to so maintain said canal.

## XII.

"That notwithstanding the duty of said respondent to the people of the State of Florida and the public generally, the said relator, as Attorney General of said State, avers and informs this honorable court that the said Florida Coast Line and Transportation Company, the said respondent, has not maintained its said canal and waterway according to said specifications and as required by law, but, on the contrary, it has neglected its duty so to do and has failed to maintain said canal at a width of not less than 50 feet and a depth of not less than 5 feet at mean low water; that practically nothing is being done, particularly on the southern portion of said canal, in the way of maintenance, and for months at a time great stretches of said waterway are neglected and practically abandoned by said respondent and permitted to remain at less than 50 feet in width and less than 5 feet in depth at mean low water.

"That measured from St. Augustine and beginning at the southern terminus of said canal, indicated by check marks in red ink on the blue print hereto attached, the said canal and waterway has been permitted to shoal and partially fill up and become narrow and at the following points is now and has for months been permitted to remain at less than 5 feet deep at mean low water and less than 50 feet wide, namely:    At and near mile posts 314 and 313 in Biscayne Bay; at and near the entrance of said canal and waterway into Biscayne Bay; at the entrance of said canal into Dumfounding Bay from the south between mile posts 309 and 308; at and near mile post 308 in Dumfounding Bay; at and near mile posts 303 and 302; at and near mile post 300; at and near mile posts 299, 298, 297, 295, 294, 293, 292, 291, 290, 289 and 288; at and near

mile posts 285, 284 and 283; at and near mile posts 281 and 280; at and near mile posts 265 and 264; at and near mile posts 94, 93 and 92; at and near mile posts 79, 78, 77, 76 and 75; at and near mile posts 52, 51 and 50; at and near mile posts 48, 47, 46, 45, 44, 43, 42 and 41.

"That at said points and at various and sundry other points easily ascertainable by examination, measurement and test, along said canal and waterway, and for great stretches of said waterway it is only 3 to 3½ and 4 feet in depth and is only 30 to 40 feet in width, particularly on the southern portion of said canal and waterway from Miami in a northerly direction to where said canal and waterway enters the navigable waters of Indian River, and from the canal connecting Indian River with Mosquito Lagoon in a northerly direction to the town of Ormond.

"That the work proposed to be done by said respondent by way of restoration and maintenance of said canal and waterway is wholly inadequate and will be of practically no value or benefit to said respondent or to the public, as will appear by reference to a letter recently written to the General Manager of said respondent by the Chief Drainage Engineer of the State of Florida after a personal inspection of said canal and waterway by said engineer and this relator, copy of which letter is hereto attached marked exhibit 'G' and made a part hereof.

## XIII.

"That the said respondent in failing to maintain said canal and waterway in compliance with said specifications and as required by law in the performance of its public duty, is evading and shirking the obligations and duties which it owes to the State of Florida and to the general

public, is subjecting the public to great inconvenience and damage, depriving them of convenient, inexpensive and certain transportation for themselves, their freight and their products, and injuring and destroying the industries of the people, retarding and hindering the development of the State, thereby defeating in a large measure the object and intent of the State in aiding in the construction and maintenance of said canal and the purpose for which said waterway was constructed, and is escaping its obligations and duties to the public to the great wrong and injury, loss and damage of the State of Florida and the public generally.

## XIV.

"That the relator for and on behalf of the said State further avers and shows unto this Honorable Court that the people of the said State and the public generally are without remedy in the premises unless it be afforded by interposition of this Court as herein prayed.

"Now, THEREFORE, We being willing that full and speedy justice shall be done in the premises do command you, Florida Coast Line Canal and Transportation Company, forthwith to proceed in the performance of your public duty to restore the said canal and waterway to its original dimensions according to the specifications prescribed by law, that is to say, to a width of not less than 50 feet and a depth of not less than 5 feet at mean low water for the entire length of said canal and waterway from the St. Johns River on the north to Biscayne Bay on the south, and particularly to so restore said canal and waterway to a width of not less than 50 feet and a depth of not less than 5 feet at mean low water at the following points, measured from St. Augustine and beginning at the southern terminus of said canal, namely: At and near

mile posts 314 and 313 in Biscayne Bay; at and near the entrance of said canal and waterway into Biscayne Bay; at the entrance of said canal into Dumfounding Bay from the south between mile posts 309 and 308; at and near mile post 308 in Dumfounding Bay; at and near mile posts 303 and 302; at and near mile post 300; at and near mile posts 299, 298, 297, 295, 294, 293, 292, 291, 290, 289 and 288; at and near mile posts 285, 284 and 283; at and near mile posts 281 and 280; at and near mile posts 265 and 264; at and near mile posts 94, 93 and 92; at and near mile posts 79, 78, 77, 76 and 75; at and near mile posts 52, 51 and 50; at and near mile posts 48, 47, 46, 45, 44, 43, 42 and 41; and at various and sundry other points easily ascertainable by examination, measurement and test along said canal and waterway; and particularly on the southern portion of said canal and waterway from Miami in a northerly direction to where said canal and waterway enters the navigable waters of Indian River, and from the canal connecting Indian River with Mosquito Lagoon in a northerly direction to the town of Ormond;

"AND WE DO FURTHER COMMAND AND REQUIRE you to hereafter at all times and at all points along said canal and waterway from St. Johns River to Biscayne Bay maintain said canal and waterway according to the specifications prescribed by law and in compliance with your public duty at a width of not less than 50 feet and a depth of not less than 5 feet at mean low water.

"Or that you appear before the Justices of this our Supreme Court sitting within and for the State of Florida at the Court Room in the City of Tallahassee, the Capital, on the 14th day of February, A. D. 1917, at 10 o'clock in

the morning of that day and show cause why you refuse so to do.

"*And have you then and there this writ.*

"Witness the Honorable Jefferson B. Browne, Chief Justice of the Supreme Court of the State of (SEAL)     Florida, and the Seal of said Court at Tallahassee, the Capital, this 31st day of January, A. D. 1917.

"G. T. WHITFIELD,
"*Clerk Supreme Court, State of Florida.*"

The respondents filed the following motion to quash:

"Now comes the Defendant, FLORIDA COAST LINE CANAL AND TRANSPORTATION COMPANY, in the above entitled cause and moves the Court to quash the Alternative Writ of Mandamus issued therein upon the following grounds, to-wit:

"1.    That the allegations in said Alternative Writ do not state or constitute a cause of action that authorizes or entitles the Relator to the remedy sought and mentioned in said Alternative Writ, or to the relief prayed in said Alternative Writ.

"2.    The facts stated in said Alternative Writ are not sufficient to authorize or entitle the Relator to Mandamus against said defendant as mentioned or prayed in said Alternative Writ.

"3.    That said Alternative Writ does not contain sufficient allegations of fact to show that the defendant is under legal duty or obligation to perform the things mentioned in said Alternative Writ and which it is sought or prayed therein to have the defendant commanded or compelled to do by mandamus.

"4.    That the alleged duties or obligations of defend-

ant in the premises, alleged in said Alternative Writ, are not such as the Court will enforce by mandamus in the premises as prayed, commanded or required in said Alternative Writ.

"5.    That the allegations of said Alternative Writ are too vague, indefinite and uncertain to authorize or to entitle Relator to mandamus as therein mentioned or prayed or to require that they be answered by said defendant.

"6.    That the alleged duties or obligations sought or prayed to be enforced in said Alternative Writ are too vague, indefinite and uncertain to be enforced by mandamus in the premises.

"7.    That the said Alternative Writ does not state a cause of action for mandamus in the premises.

"8.    That the allegations of said Alternative Writ do not sufficiently state or show such breach for legal duty or obligation on the part of defendant, or such failure to perform legal duties or obligations on the part of defendant, as to authorize or require mandamus, or to entitle Relator to mandamus as therein mentioned or prayed.

"9.    That the relief prayed, or matter commanded and required in said Alternative Writ, is too broad and cannot be granted on and in the matters alleged in said Alternative Writ and the law applicable thereto.

"10.    That it appears upon the face of said Alternative Writ, and the Statutes and exhibits referred to therein, and made a part thereof, that said Canal Company was not and is not under or legally bound to perform the alleged obligations and duties alleged in said Alternative Writ, and which it is sought therein by Mandamus to have the defendant compelled to do and perform.

"11.    Said Alternative Writ seeks to have defendant

required and commanded to restore the said canal and waterway to a width of not less than fifty feet and a depth of not less than five feet at mean low water for the entire length of said canal and waterway from the St. Johns River on the north to Biscayne Bay on the south, and so to maintain the same, but it is not alleged or shown in said Alternative Writ or exhibits that said canal and waterway was not, at and before the time of the issuing of said Alternative Writ, fifty feet wide and five feet deep at mean low water, and maintained in proper condition from the St. Johns River to St. Augustine, and it appears affirmatively on the face of said Alternative Writ and exhibits that the Relator had no knowledge or information that said canal and waterway from the St. Johns River to St. Augustine was not of said width and depth, and in proper condition, and Relator does not inform or state to the Court that such was not the fact.

"12. Said Alternative Writ seeks to have the defendant required and commanded to restore the said canal and waterway to a width of not less than fifty feet and a depth of not less than five feet at mean low water for the entire length of said canal and waterway from the St. Johns River on the north to the Biscayne Bay on the south, and so to maintain the same, but it is not alleged or shown in said Alternative Writ or exhibits that said canal and waterway was not, at and before the time of the issuing of said Alternative Writ, fifty feet wide and five feet deep at mean low water, and maintained in proper condition between St. Augustine and a point at and near mile post 41 south from St. Augustine, and it does not appear that the Relator had any knowledge or information that said canal and waterway from St. Augustine southward to a point at or near mile post 41 was not of said width and depth and in proper condition, and Relator

does not inform or state to the Court that such was not the fact.

"13.   That said defendant was under no duty or obligation in law to maintain said canal and waterway of the width of fifty feet and of the depth of five feet between the St. Johns River and St. Augustine and it appears in the statutes, mentioned or referred to in said Alternative Writ, that the requirement thereof to construct and maintain a canal or waterway of said width and depth was limited to the portion thereof between St. Augustine and Biscayne Bay.

"14.   That it appears upon the face of said Alternative Writ and in the contract between the Trustees of the Internal Improvement Fund and said defendant mentioned in said Alternative Writ and a copy of which is thereto attached, marked Exhibit 'F', and made a part thereof, that said Canal Company thereby contracted to cut and construct said portion of said canal between St. Augustine and the St. Johns River, according to said specifications, to-wit, not less than fifty feet in width and not less than five feet in depth, but said Canal Company did not contract to keep or maintain said canal, or any portion thereof between St. Augustine and the St. Johns River, of said width and depth.

"15.   If said Canal Company had contracted to keep or maintain the portion of said canal between St. Augustine and the St. Johns River, or any portion thereof, of said width and depth, such contract would not have been enforceable by mandaumis.

"16.   That said Alternative Writ seeks to have the defendant required and commanded to restore the said canal and waterway to a width or not less than fifty feet and a depth of not less than five feet at mean low water for the entire length of said canal and waterway from the

St. Johns River on the north to Biscayne Bay on the south, and so to maintain the same, but said defendant has no right, power or authority in law so to do in natural waterways covering or including a large part of said line of alleged canal or waterway between the St. Johns River and Biscayne Bay.

"17.    That said Alternative Writ seeks to have the defendant required and commanded to restore the said canal and waterway to a width of not less than fifty feet and a depth of not less than five feet at mean low water for the entire length of said canal and waterway from the St. Johns River on the north to Biscayne Bay on the south and including the waters of the Indian River, but said defendant has no right, power or authority so to do in the waters of Indian River, and the waters of the said Indian River are not subject to any digging, dredging in, removing any obstructions therefrom or digging or maintaining any canal therein by defendant as sought to be commanded by said Alternative Writ, but said waters of Indian River are under the jurisdiction and authority of the United States of America and all such matters in said river are controlled, directed and provided for by acts of Congress and by the Government of the United States acting therein and under the laws of the United States and the State of Florida, and no such mandamus can be granted against defendant in the premises as is prayed or mentioned in said Alternative Writ.

"18.    For other good grounds appearing in said Alternative Writ."

*T. F. West,* Attorney General, for Relator.

*C. M. Cooper,* for Respondent.

Love, *Circuit Judge* (*after stating the facts*).—The alternative writ issued by this Court on the relation of the Attorney General alleges that the respondent owns and pretends to maintain for public use for transporting passengers and property by vessels and other watercraft, a certain canal, composed of artificial and natural waterways, paralleling the East Coast of Florida, and lying wholly within the State of Florida, extending from the St. Johns River on the north to Biscayne Bay on the south.

From its original articles of association, attached to the alternative writ marked "Exhibit A-1," upon which Letters Patent issued May 23, 1881, it appears that the respondent company was organized "for the purpose of constructing, maintaining and operating a canal or artificial watercourse for the passage of boats and vessels, with the necessary locks, for public use in the conveyance of persons and property." No dimensions of the proposed canal then contemplated to connect the Matanzas River with Indian River, were stated in the company's charter. Subsequently, other articles of association were executed by the same incorporators appearing in the original articles, and filed in the office of the Secretary of State on July 23, 1881, upon which Letters Patent also issued, setting forth substantially the same purpose, with the same objects and between the same navigable waters as to the original Articles, which appear from "Exhibit A-2," attached to the alternative writ and made a part thereof.

Afterwards, the respondent company, in order to extend its canal, adopted, and on June 27, 1882, filed in the office of the Secretary of State, the following resolution, set out in "Exhibit A-3," attached to and made a part of the alternative writ, *viz*:   "Resolved, That in accordance with Section Twelve (12) of the Laws of Florida, enti-

tled an Act to provide a general law for the Incorporation of Railroads and Canals, the said canals shall be extended southward from lower end of Indian River through Lake Worth by the most practical route after survey of the same to the navigable waters of Biscayne Bay in Dade County, a distance of about eighty-four (84) miles, also the said canal be extended northward from St. Augustine on the most practicable route to connect the navigable waters of North River with the navigable waters of Pablo Creek at its junction with the St. Johns River a distance of about twelve (12) miles, in St. Johns and Duval Counties.

"Resolved further, That it is the true intent and meaning of the Articles of Association of said Corporation for connecting the navigable waters therein and herein mentioned that whenever in the said rivers or creeks and lagoons along said route from the St. Johns River on the north and Biscayne Bay on the south, any shoals, oyster banks or other obstructions to the complete navigation of the waters of the coast between the points above named, to steamers, boats or vessels navigating the same drawing three (3) feet of water or less shall occur interfering with the progress and navigation of the steamers, boats or vessels of the said corporation, that it is a part of the work in connecting the said canals and approaches and artificial waterways to remove such obstructions as may occur by opening new channels for their own use and profit without interference with the present, or other natural channels that may be formed."

The legislature of the State, by Chap. 3166, Acts of 1879, Chap. 3641, Acts of 1885, and Chap. 3995, Acts of 1889, authorized grants of public lands to be made to the respondent Company, to aid it in effecting the purposes for which it is formed, as a result of which said company

has received, as is alleged in the alternative writ, over one million acres of land from the State.

By Sec. 3, Chap. 3995, Acts of 1889, it is provided as follows:

"That the canals and waterways of the said company shall be not less than fifty (50) wide and not less than five (5) feet deep at mean low water for the entire distance between St. Augustine and Biscayne Bay, and so maintained by the company."

From a reference to the Articles of Association of the respondent company, attached to and made a part of the alternative writ, the statutes of this State, under which the said company was incorporated whereby it was granted certain franchises and privileges such as the right of eminent domain, the right to charge tolls for the use of its canals and waterways, the right to construct and operate its canal as a part of navigable rivers, which can be held and exercised only by legal authority derived from the sovereign power, as well, also as those statutes authorizing grants of land to the company to aid it in effecting the purposes for which it was formed, there can be no question but that the respondent company is a public service corporation, and as it has been granted by the State, and exercises certain rights, franchises and privileges, some of which are the attributes of sovereignty, so there exists correlative duties and obligations to the public, which it should and by appropriate proceedings can be compelled to faithfully and properly discharge.

A canal such as the one constructed and operated by the respondent company is a navigable public highway, for the transportation of persons and property. Kennedy v. Indianapolis, 103 U. S. 599, text 604-5; Robinson v. Chamberlain, 34 N. Y. 389, 90 Am. Dec. 713; Barnett v. Johnson, 15 N. J. Eq. 481; Buffalo B. S. C. Co. v.

Dow, 63 Tex. 492, 51 Am. Rep. 668. As a public high-way it is in this respect like railroad companies, which, as stated in Wisconsin, M. & P. R. Co. v. Jacobson, 179 U. S. 287, 45 L. Ed. 194, 21 Sup. Ct. Rep. 115, "have from the very outset been regarded as public highways, and the right and duty of the government to regulate in a reasonable and proper manner the conduct and business of railroad corporations have been founded on that fact. Constituting public highways of a most important char-acter, the functions of proper regulation by the govern-ment springs from the fact that in relation to all highways the duty of regulation is governmental in its nature. At the present day there is no denial of these propositions." (Citing cases.)

Canals owned and operated by chartered companies with the rights, privileges and franchises, such as are en-joyed by the respondent company, in addition to being public highways, have many of the distinguishing char-acteristics that make railroad companies *quasi* public cor-porations in respect to the authority of the courts and legislature to enforce the public duties enjoined upon them. If not, then what redress has the State or public for a neglect, infringement or violation of these duties?

As a general rule, a canal company is not a common carrier, its business, ordinarily, being that of providing artificial channels or navigable ways for public transpor-tation; and, except in rare instances, its public duties per-tain exclusively to the construction and maintenance of its waterways.

This duty may be either expressly required by statute, or implied by law in conferring or permitting the use of the franchises and privileges, granted to and exercised by Canal Companies undertaking to serve the public "whether the provision of the grants be mandatory or

merely permissive, and the acceptance or exercise of the rights carries with it the duty of properly rendering the public service undertaken by virtue of the rights conferred or permitted to be exercised." State *ex rel.* Ellis v. Atlantic Coast Line R. Co., 53 Fla. 650, 44 South. Rep. 213, text 219.

After the Canal Company has elected to proceed and exercise the rights, privileges and franchises delegated to it by the sovereign power by constructing its canal, operating it for public use, accepting large grants of land from the State to aid it in effecting the public purposes and objects of its incorporation, then the duty of maintaining its canal and waterways, in a proper manner attached, from the performance of which it can not be released except by due process of law. Riddle v. Merrimack River Locks and Canals, 7 Mass. 169, 5 Am. Dec. 35.

To subserve the purpose of its construction a canal, thrown open for navigation to all, upon the payment of a fixed toll, should be available at all reasonable times for public use with safety and convenience. If the canal is allowed to shoal or narrow, reducing its proper size and capacity to accommodate the different watercraft for the use of which it was constructed, and if it is permitted so to remain for long periods of time, as is alleged in the alternative writ has been the condition of the canal and waterways of the respondent company, then the very object and purpose of its construction, which were to provide a waterway to be used by the public with safety and convenience, is defeated, the State deprived of at least a large part of the consideration for the large grants of land made to, and the special privileges, franchises and rights conferred upon such company, and the company is thus allowed to evade and escape its clear and plain duty and obligation imposed upon it by the general law, as well

as by the statutes, the provisions of which, as is alleged in the case of the respondent company, it has expressly accepted.

The general rule governing a Canal Company with respect to the operation and maintenance of its waterways in the absence of particular and legally enforceable specifications, it is held, is that it is bound so to maintain and manage the canal that it can be used with reasonable safety and convenience by the public for whose benefit it was constructed. To this end the duty of such company to the public demands the exercise of ordinary and reasonable care. Pennsylvania Canal Company v. Burd, 90 Pa. St. 281, 35 Am. Rep. 659.

In determining the existence and extent of a Canal Company's privileges and franchises, and of its resultant duties and obligations therefrom, reference must be had to the particular law or charter creating it and such valid statutory provisions as may relate thereto. State v. Portland General Electric Co., 52 Ore. 502, 95 Pac. Rep. 722; 98 Pac. Rep. 160.

Referring then to the Charters of the respondent company and to the statutes relating to its public duties and obligations, it is clear that said company is charged with the duty of exercising ordinary and reasonable care to keep and maintain its canal and the waterways operated and controlled by it according to the dimensions and of the capacity required by its Charter and by Chapter 3995, Acts of 1889, the latter prescribing particular specifications for part of the canal, and the performance of such duty may be enforced by mandamus, in a proper case, upon the relation of the Attorney General, when the allegations of the writ are sufficiently specific and there is no other adequate remedy afforded by law. State ex rel. Ellis v. Atlantic Coast Line R. Co., 53 Fla. 650, 44 South.

VOL. 73, JANUARY TERM, 1917.    1033

State ex rel. v. F. C. Line Canal Trans. Co.—Opinion of Court.

Rep. 213, text 220.   The policy of the law is to require by mandatory process the performance by public utility corporations of their duties to the public.    State *ex rel.* Ellis v. Tampa Water Works Co., 57 Fla. 533, 48 South. Rep. 639.

While the duty of the Canal Company with respect to the maintenance of the waterways operated and controlled by it, is as above stated, yet it is contended by respondent that in the event it should be held that mandamus is the appropriate remedy in this case to require the Canal Company to restore its waterways to the dimensions provided by statute or the Charter of the Company, should it appear that it has failed so to do, yet it is beyond the province of such a remedy to require the company "to hereafter at all times and at all points along said canal and waterway from St. Johns River to Biscayne Bay maintaining said canal and waterway" in accordance with such requirements as is commanded in the writ.

On the other hand, relator contends that this question has been definitely determined and settled by this court in the case of State *ex rel.* Ellis v. Atlantic Coast Line R. Co., 53 Fla. 650, 44 South. Rep. 213.

An examination of this case develops that in the discussion of the duty of a railroad as a common carrier, the court states, that it is the duty of such a railroad to provide a reasonably safe and sufficient roadbed, track, equipment and facilities and of maintaining and operating the property in a proper condition for rendering safe. prompt and adequate service, and that such duty might be enforced in a proper case by mandamus, yet the court did not there expressly decide that mandamus would issue to require the performance of a series of continuous acts, prolonged indefinitely.    That such was not the holding of the court, as expressed in the judgment, is apparent

from an examination of the writ then being considered, and the scope and nature of the remedy sought. The writ in that case mentioned specific defects in the roadbed and track of the respondent railroad company, and commanded said respondent "to forthwith repair and put in reasonably safe and suitable condition your roadbed and track over and along the line of railroad" at certain definitely designated sections of the railroad. It will be noted that the specific duty contemplated being enforced by the writ, was that of repairing and putting in reasonably safe and suitable condition the roadbed and track of the railroad, not of keeping it so at all times thereafter.

Further the court in its opinion indicates, that the duty enjoined upon the railroad company had reference to certain definite and determinable acts, the completion and performance of which might be ascertained within some definite time, for it is stated in the opinion that "the roadbed and track of a railroad have the elements of stability and fixedness, and it can readily be ascertained *when they are put in the condition required by specific allegations and commands*." If the court had decided that the railroad could be compelled by mandamus to keep and maintain its track and roadbed in a safe and suitable condition at all times after the issuance of the writ, how could it readily be ascertained *when* the commands of the writ had been obeyed? In the subsequent case of State *ex rel.* Ellis v. Atlantic Coast Line R. Co., 53 Fla. 689, 44 South. Rep. 223, the alternative writ was amended, and it appears that the mandatory part did command the respondent company "to forthwith repair and put in reasonably safe and suitable condition, *and maintain the same* in such condition, your roadbed and track," etc.; but it does not appear that this part of the writ was there challenged by respondent or that the court considered it in

the light of requiring the railroad company to perpetually maintain its roadbed in the condition to which it was required to restore it.

Neither do we consider the case of State *ex rel.* Luning v. Johnson, 71 Fla. 363, 72 South. Rep. 477, an authority sustaining this contention of relator. While the alternative writ considered in that case required the Tax Collector to discharge his statutory duty by remitting to the State Treasurer fifteen per cent. of the amount of certain taxes collected for the month of February, 1916, "and for each succeeding month hereafter," no question as to that part of the writ was raised by demurrer or otherwise, nor was such question considered or determined by the court in its decision of this case.

The channel of a canal, such as the one now under consideration, extending for hundreds of miles through artificial and natural watercourses, varies and shifts in width and depth from time to time as the result of floods, freshets, storms, tides and other natural causes incident to such property, beyond the control of its owners. Thereby shoals and sandbars are formed, which narrow and fill the channel and form other obstructions, rendering it humanly impossible for the command in the alternative writ "hereafter at all times" to be strictly obeyed. Every temporary shoaling or narrowing of the canal, however trivial or transitory, would subject respondent to be brought before this court on charges of contempt, involving the necessity of frequent investigations by this court as to the causes, seriousness, extent, character and permanency of such obstructions; whether the Canal Company was exercising due diligence in preventing or removing such obstructions; and various related matters, in effect rendering this court a supervising and managerial body as to the operation and conduct of the canal. Such

a condition is not within the province of a writ of mandamus to create, nor is it practical for the courts by mandamus to enforce a series of continuous acts, required to be performed as long as the canal continued to be operated.

It would be out of the question to keep this case open for all time, or even for an indefinite number of years, to superintend the continuous performance of these duties by the respondent. There would be no end to the number of occasions when this Court might be called upon to determine whether the respondent had performed the duties in question faithfully and efficiently, or so negligently and unskilfully as to justify it being arraigned for contempt for a violation of the mandate of this court. Iron Age Pub. Co. v. Western Union Tel. Co., 83 Ala. 498, 3 South. Rep. 449.

The ordinary office of the writ of mandamus is to coerce the performance of single acts of specific and imperative duty. The court will not undertake to compel the performance of a series of continuous acts, as it is impossible to furnish that superintendence, without which the court's mandate becomes nugatory. State *ex rel.* City of Mobile v. Board of Revenue & Road Commissioners, 180 Ala. 489, 61 South. Rep. 368; Diamond Match Co. v. Powers, 91 Mich. 145, 16 N. W. Rep. 314; State *ex rel.* Rosenfield v. Einstein, 46 N. J. L. 479.

Appropriate to the facts under consideration, and as a correct statement of the law here involved is the language of the Supreme Court of Washington, in the case of State *ex rel.* Hawes v. Brewer, 39 Wash. 65, 80 Pac. Rep. 1001, 109 Am. St. Rep. 858: "Mandamus will not lie to compel a general course of official conduct, as it is impossible for a court to oversee the performance of such duties. 13 Ency. Pl. & Pr. 497. It will be seen in this

## VOL. 73, JANUARY TERM, 1917.    1037

State ex rel. v. F. C. Line Canal Trans. Co.—Opinion of Court.

case that the remedy sought was entirely too general to be at all practical. It is true that we decided in State v. Spokane St. R. Co., 19 Wash. 518, 67 Am. St. Rep. 739, 53 Pac. 719, that mandamus would lie to compel a street railway company to resume the operation of a line it had discontinued. But there was one specific thing the railroad company was required to do, which involved the entire controversy; but here there is a general course of official conduct sought to be compelled."

In connection with this feature of the mandatory part of the alternative writ, we are confronted with another and practical difficulty. The commands of a peremptory writ of mandamus must strictly follow and conform to those of the alternative writ, and unless it does so, such peremptory writ will not be enforced. State v. Gibbs, 13 Fla. 55, 7 Am. Rep. 233; State v. Call, 39 Fla. 165, 22 South. Rep. 266.

The peremptory writ being issued, is to be obeyed, and a certificate showing obedience is required to be filed. State v. McLin, 16 Fla. 17; State v. Board of County Canvassers of Alachua County, 17 Fla. 9.

Such being the requirements in mandamus proceedings, how could a certificate showing obedience to a writ requiring the respondent "hereafter at *all times*" to maintain its canal and waterways according to the required standard? This would be impracticable and can not consistently be required.

It is contended by respondent that the mandatory clause of the alternative writ is broader than its recitals will properly support or the statutes and its charter will require. By the mandate of the writ, respondent is commanded, in the performance of its public duty "to restore said canal and waterway to its original dimensions, according to the specifications prescribed by law,

that is to say of a width of not less than fifty feet and of a depth of not less than five feet, at mean low water mark, for the entire length of its said canal and waterway from the St. Johns River on the north to Biscayne Bay on the south," and further "to hereafter at all times and at all points along said waterway from St. Johns River to Biscayne Bay, maintain said canal and waterway * * * at a width of not less than 50 feet and a depth of not less than 5 feet at mean low water."

It will be noted that this mandatory clause in part requires the *entire* canal and waterway from the St. Johns River to Biscayne Bay, as a whole, to be restored to the stated dimensions and so kept and maintained *at all times hereafter*.

The allegations of the writ, charging the default of respondent, are that the respondent has failed to maintain its canal and waterway as required by law, "that practically nothing is being done, particularly on the southern portion of said canal, in the way of maintenance, and for months at a time great stretches of said waterway are neglected and practically abandoned by said respondents, and permitted to remain at less than 50 feet in width, and 5 feet in depth at mean low water."

"That, measured from St. Augustine and beginning at the southern terminus of said canal, indicated by check marks in red ink on the blue print hereto attached, the said canal and waterway has been permitted to shoal and partially fill up and become narrow and at the following points is now and has for months been permitted to remain at less than five feet deep at mean low water and less than fifty feet wide, namely," then follows the designation of certain points along the course of the said canal and waterway.

"That at said points and various and sundry other

points, easily ascertainable by examination, measurement and test, along said canal and waterway, and for great stretches of said waterway, it is only 3 to 3½ feet in depth and is only from 30 to 40 feet in width, particularly on the southern portion of said canal and waterway from Miami in a northerly direction to where said canal and waterway enters the navigable waters of Indian River, and from the canal connecting Indian River with Mosquito Lagoon in a northerly direction to the town of Ormond. That the work proposed to be done by said respondent by way of restoration and maintenance of said canal and waterway is wholly inadequate and will be of practically no value or benefit to said respondent or to the public."

It is well settled that great care, particularity and certainty is required in the mandatory part of the alternative writ, and that it must conform to the case made by the recitals in the writ, and must not require more to be done than is justified by the recitals. Florida Cent. & Pen. R. Co. v. State, 31 Fla. 482, 13 South. Rep. 103.

A careful consideration of the quoted recitals of said writ, in connection with the blue print and map attached to, and made a part of said writ, develops that nowhere is it charged particularly and certainly, that the canal between St. Johns River and St. Augustine, and between St. Augustine and the forty-first mile post along said canal, south of the latter place, or that any part of the said waterway along the Indian River, between Goat Creek and Jupiter Inlet, does not conform to the standard of requirements to which relator urges, it is the duty of respondent to maintain such waterway.

The allegations of the writ do not amount to a charge that the respondent company has *totally failed* to properly maintain and keep in repair its waterway along its entire

course, for the general allegation in the first paragraph of Section XII of the writ, to the effect that said respondent has not maintained its said canal and waterway according to said specifications and as required by law must be construed and held to be limited by the particular defaults alleged at and between definite points along said waterways *Generalibus speciala derogant*. It is a well settled rule of pleading that where both general and specific allegations are made respecting the same subject-matter, the latter control. 31 Cyc. 85.

The allegations in the recitals of the writ as to the specific default and breach of duty on the part of respondent, must be held to be confined to only the designated parts of said waterway, while the mandatory part of the writ applies to the waterway as a whole, thus violating the rule of pleading above stated.

It is further contended by respondent that the dimensions of that portion of its waterway between the St. Johns River and St. Augustine, are not prescribed by any statute of this State; that the particular specifications as to width and depth of such canal and waterways prescribed by Chapter 3995, Acts of 1889, specifically refer to and are confined as to their application to the canal and waterways of the said company between St. Augustine and Biscayne Bay; that any requirement that the part of said canal between St. Augustine and the St. Johns River should be not less than fifty feet wide and five feet deep rests solely upon the terms of its contract with the Trustees of the Internal Improvement Fund, bearing date December 1st, 1906, wherein it is provided that "the portion of said canal between St. Augustine and the St. Johns River shall be governed by and conform to the same requirements as to width, depth of water and construction as is provided by statutes for the canal south of

VOL. 73, JANUARY TERM, 1917.     1041

State ex rel. v. F. C. Line Canal Trans. Co.—Opinion of Court.

St. Augustine," a copy of said contract being attached to the alternative writ, marked "Exhibit F," and made part thereof; that in the event it owes any public duty with reference to that part of its canal north of St. Augustine, subject to enforcement by mandamus, such duty is to be determined solely from the provisions of its Charter, because, as respondent contends, mandamus will not lie to enforce the terms of a contract.

It is further contended by respondent that the mandate of the writ should not apply to the waterway along Indian River, between Goat's Island and Jupiter Inlet, because by the provisions of Chapter 4283 of the Acts of 1883, it has been released from any obligation to maintain such part of the said waterway; that the conditions for such release imposed by statute, *viz*, the surrender and release to the United States by the Canal Company of such portion of said waterway, and the assumption and control thereof by the United States, have been fully complied with, and that the United States has assumed the jurisdiction, authority and control over such portion of said waterway, as is evidenced by certain statutes of the United States, making appropriations for improving that part of Indian River; and further, that as Indian River is a navigable waterway, the Canal Company is prohibited from excavating therein or in any manner altering or modifying the course, condition or capacity thereof, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of State, under the provisions of Section 10, Chapter 425 of the Act of Congress of March 3, 1899; and that the rule that mandamus will not issue to enforce a right which is contingent upon the further act of a third person, or which is beyond the power of the respondent to perform, is applicable and controls. While these conten-

tions may not be without weight and merit, under a state of facts involving their application, yet it is unnecessary and improper at this time to pass upon them, in view of our construction that the allegations of the writ as to the default and breach of duty on the part of respondent, do not charge that such sections of the canal and waterway are not of the dimensions required by law, or that they are not in good order and open for the safe and convenient use of the public.

That portion of the mandatory part of the writ requiring the respondent to restore to certain stated dimensions its canal and waterways "at various and sundry other points easily ascertainable by examination, measurement and test along said canal and waterway," is objectionable in that it violates another well settled rule applicable to mandamus, to the effect that the respondent should not be required to look beyond the writ to ascertain the precise acts which he is commanded to perform. In other words, "that the range of action required of the respondent can not be left to indiscriminate outside ascertainment, nor can he be required to look *dehors* the writ to ascertain his duty. Florida Cent. & P. R. Co. v. State, 31 Fla. 482, 13 South. Rep. 103; Howell v. State, 54 Fla. 199, 45 South. Rep. 453.

In the last case this court cites approvingly the holding in Clayton v. McWilliams, 49 Miss. 311, to the effect that when anything remains to be done, or fact to be ascertained, relief can not be granted by mandamus.

The last quoted clause in the mandatory part of the writ, leaves the precise acts to be done thereunder in a more or less indefinite and uncertain state, contingent upon the result of an "examination, measurement and test" to be conducted by some indefinite person or agent

VOL. 73, JANUARY TERM, 1917.    1043

State ex rel. v. F. C. Line Canal Trans. Co.—Opinion of Court.

and which may be more or less thorough, careful. and efficient.

This construction is not at variance with the views expressed by this court in State *ex rel*. Ellis v. Atlantic Coast Line R. Co., 53 Fla. 689, 44 South. Rep. 223, to the effect that the duty to maintain its roadbed and track in a proper condition, requires a railroad company to have a more or less detailed knowledge of every portion of its roadbed and track, and therefore more specific allegations than were made in the alternative writ in that case, as to the points at which and the particulars in which the breaches of duty occurred were not required. In that case the recitals of the writ alleged the condition of the roadbed and track to be such "that the main line of the railroad as a *whole* must be in an unfit and unsuitable state for the public service in which it is used."

Such a broad construction can not be given to the allegations of the writ in the present case, as hereinbefore pointed out.

As the alternative writ in mandamus proceedings stands as the pleadings on the part of the relator, if too much is asked, the respondent may show this as a sufficient cause for not complying with the mandate of the writ. The mandate of the writ must be enforced as a whole, and where a motion to quash the alternative writ is made, and it appears from the face of such writ that relator is not entitled to have the order enforced as a whole, the motion to quash should be granted with leave to relator to amend such writ if it should be so advised. Merchants Broom Co. v. Butler, 70 Fla. 397, 70 South. Rep. 383.

An order will be entered that, unless the Attorney General shall within twenty days amend the alternative writ so as to conform to the principles announced in this

opinion, the motion to quash the alternative writ will be granted.

BROWNE, C. J., and TAYLOR, SHACKLEFORD and WHITFIELD, JJ., concur. ELLIS, J., disqualified.