THE SUBURBAN INVESTMENT COMPANY, *et al., Appellants,*
v. F. J. HYDE *et al., Appellees.*

1. The requirement of section 796 of the General Statutes of 1906, that the proceeds from the sale of county bonds shall be paid to the trustees of the county bonds to be *distributed* by them for the purposes for which such bonds were sold, and for no other purposes, does not give such trustees any

power or duty with reference to the construction or improvement of roads.

2. As the trustees of county bonds have no authority with reference to the letting of contracts for improving roads, any understanding as to such matters between the trustees and the county commissioners who have authority to make such contracts is of no relevancy in making the contracts.

3. Where at the bottom of the blank proposals addressed to the county commissioners upon which bids are made for work on public roads in the county there appears the following: "Approved" ——————————— "For Trustees of County Bonds," and in the forms giving general specifications for the work, the engineer of the bond trustees is mentioned, and it is also stated in the forms for specifications that the commissioners and the bond trustees reserve the right to reject any or all proposals, such blanks and provisions may be regarded as surplusage and harmless in view of the law controlling the subject.

4. Where a party whose bid for road work is the lowest as to a part of the work, failed and refused to submit samples of material to be tested as reasonably requested, and the bid of the party to whom the contract was awarded was the lowest on all the work, the county commissioners under all the circumstances may reasonably have been warranted in regarding the bid accepted as "the bid of the lowest responsible bidder," as required by the statute.

5. Where the specifications upon which bids for work on the public roads contain no provision that apparently tends to unduly increase any bid, and the specifications are not inherently uncertain or unreasonable, and there is nothing to indicate that the accepted bid is not a reasonable price for the work, and it does not appear that the law has not been substantially complied with in making the award, and the discretion vested in the county commissioners does not appear to have been abused, and the contract as awarded is apparently fair and capable of a just and lawful enforcement,

the courts will not interfere with the award of the contract by the county commissioners.

This case was decided by Division A.

Appeal from the Circuit Court for Duval County.

The facts in the case are stated in the opinion of the court.

*Axtell & Rinehart* and *E. J. L'Engle,* for Appellants;

*Cooper & Cooper, Barrs & Browder,* and *Kay & Doggett,* for Appellees.

WHITFIELD, C. J.—The County Commissioners of Duval County having been authorized to issue bonds for the construction of hard surfaced roads in the county, Tyler v Hyde, 60 Fla. 389, 52 South. Rep. 968, this proceeding in equity was brought in the Circuit Court for Duval County by the appellants as tax payers to enjoin the performance of a contract awarded by the county commissioners for the construction of hard surface roads in Duval County, on the grounds that the bond trustees of the county had authority to make provisions for constructing such roads when the funds therefor were derived from the sale of bonds issued by the county. and that the contract as awarded is invalid because of its award and its provisions. No question of fraud or bad faith is presented.

The constitution provides that five county commissioners shall be elected in each county and that their "powers, duties and compensation * * * shall be prescribed by law." Section 5, Article VIII as amended, see Acts of 1899, p. 358; General Statutes of 1906, p. 41.

The provisions of the organic law contemplate the existence of a board of county commissioners who are general administrative officers of the county; and the provision that their powers and duties shall be prescribed by law, authorizes a wide legislative discretion in regulating such powers and duties, but does not contemplate that any of the powers and duties usually exercised by county commissioners shall be conferred upon or performed by others. The statutes make provision for the issue by the county commissioners of county bonds for specified purposes, one being "for the purpose of constructing paved, macadamized or other hard surfaced highways" in the county. It is expressly enacted that the county commissioners shall have authority to establish, construct and improve roads in the county and no such authority is given the county bond trustees. The requirement of section 796 of the General Statutes that the proceeds from the sale of bonds shall be paid to the trustees of the county bonds to be *"distributed"* by them, does not give such trustees any power or duty with reference to the construction or improvement of roads. The original act of 1877, Chapter 2088, authorized the issue by the county commissioners of county bonds only "for the purpose of erecting a court house or jail, and funding the outstanding indebtedness of the county or for either of such purposes," and empowered the board of county commissioners when they had issued bonds under the statute to appoint by resolution "a financial committee of three persons, who shall be resident freeholders of the county to be styled trustees of county bonds who shall each give bond running to the county 'treasurer, with sufficient sureties, in such sum as may be required by the county commissioners, conditioned that the said trustee shall faithfully discharge the trust confided to him, and

shall pay over and duly account for all such sums of money as may come into his hands by virtue of such trust, which said bonds shall be approved as to the form and the sufficiency of sureties by the board of county commissioners; and the county commissioners may, from time to time, as circumstances may require, demand additional security from any such trustee." See section 799 Gen. Stat. of 1906. It was further provided that: "The proceeds of all bonds sold for money shall be paid over to the County Trustees to be disbursed by them for the purposes for which such bonds were sold, and for no other purpose. All money collected to pay the interest, or for a sinking fund of said bonded debt, shall be paid over by the collector of revenue, or other person receiving the same on account of taxes collected or property sold therefor to the said Trustees, and the said Trustees are required to pay out of the moneys so received the interest of said county bonds, and to invest the residue in the bonds aforesaid, or in bonds or stocks of the United States, bearing interest, to be held as an accumulating fund for the ultimate redemption of said county bonds. The said Trustees shall annually, on such day as may be required by the Board of County Commissioners render a report to the said Board, in which they shall state the amounts of money received and for what purposes and from what sources, severally, and when received, and where and how the same has been invested, and enumerating the kind and amount of the securities held therefor describing the same separately, and such other matters as may be required by the said Board, in order to a full understanding, which said report shall be published at length by order of the Board. The said Trustees shall have such compensation for their services as may be allowed by law to the County Treasurer for the safe

keeping and disbursement of the moneys which may come into their hands as said Trustees, to be paid out of the County Treasury." See sections 600, 604, 605 and 608 Rev. Stat. of 1892. The only pertinent changes made in the original enactment are section 786 General Statutes authorizing the County Commissioners to issue county bonds "for the purpose of constructing paved, macadamized or other had surface highways, or erecting a county court house or jail, or other public buildings, and funding the outstanding indebtedness of the county, or for any of such purposes;" and in section 796 General Statutes requiring the proceeds of bonds sold to be paid over to the trustees of the county bonds to be "distributed" by them instead of "disbursed" by them as under the original act. Manifestly it was not the purpose of the legis lature to confer upon the trustees of county bonds whom the county commissioners were authorized to appoint, any of the sovereign authority, powers or duties that can be exercised or performed only by a State or county officer. since the legislature must be presumed to have intended a valid enactment in providing for such trustees, and the constitution expressly ordains that all State and county officers not provided for in the organic law shall be appointed by the Governor or elected by the people, that all county officers, except assistant assessors of taxes shall be commissioned by the Governor, that all officers shall take a prescribed oath of office, and that the term of office shall not be longer than four years. In authorizing the county commissioners to appoint "a financial committee" "to be styled trustees of county bonds" and in requiring each of them to give a bond "running to the county treasurer" to be conditioned and approved as required by the statute, it was clearly the purpose of the legislature to make provision only for a definite, competent and re-

sponsible fiscal agency to assist the county commissioners ministerially in performing their public duties, chiefly in distributing the funds derived from the sale of bonds to "the purposes for which such bonds were sold, and for no other purpose," in paying the interest and principal of the bonded indebtedness, in making investments of the sinking fund, in caring for such investments when made, and in cancelling redeemed obligations.    See City of Tampa v. Salomonson, 35 Fla. 446, 17 South. Rep. 581. Even conceding it to be the legislative intent that the trustees shall retain the custody of money "distributed" to the purpose of the construction of hard surface roads, while the work is being done, it is their duty to pay it out on proper warrants drawn by the county commissioners, and it is plainly not contemplated that the trustees shall control or regulate the construction of the roads, since that is an administrative matter, expressly committed by statute to the county commissioners as contemplated by the constitution.

As the trustees of the county bonds had no authority with reference to the letting of contracts for improving roads, any understanding as to such matters between the trustees and the county commissioners is merely irrelevant.    The advertisement for bids to construct the roads was made by the county commissioners alone and the forms containing the proposals on which the bids were to be made were addressed to the county commissioners only and no mention of the trustees is made therein except that at the bottom of the proposal after the blank for approval by the county commissioners appears the following: "Approved." .......... "For Trustees of County Bonds."    In the forms giving general specifications the engineer of the bond trustes is mentioned, and it is stated that the commissioners and the bond trustees reserve the

right to reject any or all proposals. These provisions may fairly be regarded as surplusage and harmless in view of the law controlling the subject.

The statute required the county commissioners to accept "the bid of the lowest responsible bidder" unless they "shall reject all bids because the same are too high." It appears that one bidder whose bid was lower on some of the work than the one to whom the contract was let failed and refused to submit samples of material as requested and did not submit samples until after the engineer had completed his tests and was preparing his report, and that the bid of the one to whom the contract was let was for some of the work the lowest bid and for all the work lower than the aggregate bid of the other bidder whose bid was lower on a part of the work. These facts and other circumstances disclosed by the record, may reasonably have warranted the county commissioners in regarding the bid accepted as "the bid of the lowest responsible bidder," considering character of material and all other pertinent matters; and there is nothing shown to require a reversal of that action. This was the conclusion of the Chancellor. There is apparently no provision in the specifications that tended to unduly increase any bid for the proposed work, and nothing indicates that the bid accepted is not a reasonable price for the work, there being many higher bids.

The terms and provisions of the specifications are not so uncertain or unreasonable on their face as to render the award of the contract illegal or void. It does not affirmatively appear that the law has not been substantially complied with in making the award, the discretion necessarily vested in the county commissioners does not appear to have been abused, and the contract as awarded

is apparently fair and capable of a just and lawful enforcement.

The following opinion was rendered by the chancellor in denying an injunction and is justified by the record:

"This cause being a matter of considerable public interest, I deem it advisable to outline my reasons for denying the application for a temporary restraining order.

In the first place, the Statute creating the Trustees for county bonds does not in my opinion authorize the said Trustees to build county roads with the moneys received from the sale of county bonds, nor do I find that that statute takes from the County Commissioners the powers and duties cast upon them by the general laws as to roads and bridges.

I find that Chapter 5969, Laws of 1909, is applicable and constitutional, and that under said chapter the County Commissioners must award the contract to the lowest responsible bidder. The County Commissioners must decide the question which bidder is the lowest responsible bidder. The question of responsibility is practically eliminated by amendments filed to the bill of complaint, leaving the question to be decided whether such a case is made by the bill of complaint as will justify a court in reviewing the action of the board of County Commissioners in deciding which bid is the lowest. I do not find such a case made by this bill of complaint. I think the bill demurrable on that ground. It seems to me that it is necessary that samples of the brick must be furnished and tested before the board of County Commissioners could exercise the discretion vested it in by law to determine the lowest bid. The quality of the material to be used seems to me to enter as much in the question of cheapness as the price

52 Vol. 61

asked.   While the specifications are silent as to the exact time within which such samples are to be furnished, yet it seems to me that they contemplate without doubt that such samples are to be furnished and tests made before the letting of any contract.   Now it appears from the pleadings and affidavits filed, that Bryan and Company were afforded ample opportunity to furnish the sample of their bricks, their attention being called to the necessity at least three times, and a virtual refusal each time on their part to furnish any.   The board of County Commissioners must have been vested with authority to call upon the bidder to furnish the samples as the specifications did not require that the same be furnished with the bids, and if a bidder refuses to do this when required and waits until after all other samples have been tested, then it seems to me he is in no better position than if he had failed to deposit the certified check required.

Under the allegations in the bill of complaint and other pleadings and exhibits I do not find that the injunction should be issued in this case.

R. M. Call,<br>Judge."

It is not made to appear that the order denying the injunction was error, and as the bill of complaint discloses no equity for an injunction, the relief prayed, the demurrer thereto was properly sustained.

The orders appealed from are affirmed.

SHACKLEFORD and COCKRELL, J. J., concur;

TAYLOR, HOCKER and PARKHILL, J. J., concur in the opinion.