CLAUDE L'ENGLE, *Appellant,* v. EDWIN P. HOLMES, *et al.,* COUNTY COMMISSIONERS FOR DUVAL COUNTY, FLORIDA, *Appellees.*

Opinion Filed February 18, 1913.

When a board of county commissioners of a county deem that it is expedient to issue county bonds for the purpose of constructing paved, macadamized or other hard-surfaced highways and adopts a resolution, in accordance with the provisions of Section 786 of the General Statutes of 1906, wherein they determine that bonds shall be issued to the amount of one million dollars, running for a period of thirty years, bearing interest at the rate of 5% per annum, such bonds to be dated on a certain designated date, and it is further provided in such resolution that no more than $250,000.00 of these bonds shall be sold or proceeds used in any one year, and such resolution as adopted is published, in accordance with law, and at an election called for that purpose, which resulted in a ratification of such resolution by a majority of the votes cast, such restriction as to the issuance of such bonds is binding, and such board of county commissioners

may be restrained, upon a bill filed by a citizen taxpayer, from issuing the whole series of bonds before the expiration of four years from the date so designated.

Appealed from the Circuit Court for Duval County.

Order reversed.

*McNamee* & *Simmons,* for Appellant;

*Fleming* & *Fleming* and *J. S. Diver,* for Appellees.

SHACKLEFORD, C. J.—On the 17th day of September, 1909, the Board of County Commissioners for Duval County, Florida, adopted the following resolution:

"Resolved, By the Board of County Commissioners of Duval County, Florida, that bonds for the County of Duval, State of Florida, shall be issued to the amount of 'one million dollars ($1,000,000.00) running for a period of thirty years, bearing interest at the rate of 5% per annum, said bonds to bear date from the 1st day of December, 1909, and bearing interest coupons to the semi-annual interest as aforesaid, and the proceeds of said bonds shall be devoted to the construction of paved, macadamized or hard surfaced highways over the public roads of Duval County, State of Florida, now existing or which may hereafter be established.

Resolved, further, That an election shall be called to be held on the 26th day of October, 1909, in accordance with law to ascertain the wishes of the qualified voters of Duval County, Florida, and that this resolution shall be published in the several newspapers printed in the County of Duval for the full term of four weeks prior to said election.

Resolved, further, That no more than two hundred and fifty thousand dollars ($250,000.00) of these bonds shall be sold or proceeds used in any one year.

Resolved, further, That the Chairman of this Board be instructed to take all further steps as may be needful in accordance with law to carry this• resolution into effect."

An election was called and held, as therein provided, the validity of which was called in question in a suit in equity, which resulted in the same being upheld by this court. Tyles v. Hyde, 60 Fla. 389, 52 South. Rep. 968, wherein Section 788 of the General Statutes of 1906, which provides for the publication of the resolution, was copied and construed. Another suit was instituted for the purpose of determining whether the County Commissioners or the trustees, provided for in Section 799 of the General Statutes of 1906, were empowered and authorized to make and let contracts for the construction of hard surface roads in such County, which resulted in such power being declared to be vested in the County Commissioners. Suburban Investment Co. v. Hyde, 61 Fla. 809, 55 South. Rep. 76. The instant case also relates to and concerns the disposition and contemplated sale by the County Commissioners of the remainder of the bonds so issued.

On the 16th day of September, 1912, Claude L'Engle, as "a resident, freeholder and tax-payer of Duval County, Florida," filed his bill in chancery against Forest J. Hyde, and others then constituting the Board of County Commissioners of such County, wherein he sought to restrain them from making any sale of the remainder of such bonds. The defendants interposed a demurrer which questioned the equity of the bill and upon the hearing such demurrer was sustained and the restraining order

refused. From this order the complainant has entered his appeal. We deem it unnecessary to copy either the bill or the demurrer. It is sufficient to say that the bill alleges the adoption of the resolution, which we have copied in full above, the publication thereof, together with the notice of the election therein provided, and that such election resulted in the ratification of such resolution by a majority of the votes cast, "thereby authorizing the issuance of said bonds in the manner and amounts specified therein." It is further alleged that subsequent to the holding of such election litigation arose concerning the same, to which we have referred above, which delayed the sale of the bonds. We copy the seventh and eighth Sections or paragraphs of the bill, which are as follows:

"VII. That on the 29th day of November, 1909, the said County Commissioners made a sale of two hundred and fifty thousand dollars of said County Bonds, but owing to the pendency of the litigation already herein referred to the cash payment therefor was not received until August 1st, 1910; that on the 28th day of August, 1911, said County Commissioners sold an additional two hundred and fifty thousand dollars of said bonds for which the cash was received November 1st, 1911; and that on the 4th day of May, 1912, the said County Commissioners sold an additional two hundred and fifty thousand dollars of said bonds, for which the cash was received on the 28th of May, 1912.

VIII. That the respondents, as County Commissioners of Duval County, Florida, now propose to sell the final installment of two hundred and fifty thousand dollars of said bonds on the first day of October, 1912; that they are now advertising for bids for said bonds to be submitted on or before said first day of October, 1912; and

that unless they are enjoined by an order of this court they will proceed to make a sale of said last installment of said bonds on the said named date, thereby violating the terms of the resolution upon which the voters of said Duval County authorized the said bonds to be issued."

The point which we are called upon by this appeal to determine is whether or not the County Commissioners were so bound by the resolution which they had adopted and had submitted to the voters for ratification as to prohibit them from selling more than $250,000.00 of such bonds in any one year or in using a greater amount of the proceeds of such sale within one year. Undoubtedly, as worded, such resolution does contain such restriction and prohibition, as a mere inspection thereof will show. Is such restriction binding? The appellees earnestly contend that it is not and cite and rely upon Section 786 of the General Statutes of 1906, which is as follows:

"Whenever the Board of County Commissioners of any County shall deem it expedient, or to the best interests of such County, to issue the County bonds of their County, for the purpose of constructing paved, macadamized or other hard surfaced highways, or erecting a Court House or Jail, or other public buildings, and funding the outstanding indebtedness of the County, or for any of such purposes, they shall determine by resolution to be entered in their records, what amount of bonds is required for such purpose, the rate of interest to be paid thereon, and the time when the principal and interest of such bonds shall be due and when payable."

It is insisted that this statute requires the County Commissioners to determine only three things by resolution, "what amount of bonds is required for such purpose, the rate of interest to be paid thereon, and the time when the principal and interest shall be due and

when payable," and that, if anything more is undertaken to be determined thereby, it may be treated as surplusage. City of Tampa v. Solomonson, 35 Fla. 446, 17 South. Rep 581, is relied upon to support this contention, especially its citation, with apparent approval, of Yesler v. City of Seattle, 1 Wash. 308, 25 Pac. Rep. 1014. We are of the opinion that the instant case is so readily distinguishab'e by reason of the variant facts and circumstances from City of Tampa v. Solomonson, *supra,* that the latter case is but little in point, as we held was true in Hillsborough County v. Henderson, 45 Fla. 356, text 362, 33 South. Rep. 997, text 999. We never intended by our citation of Yesler v. City of Seattle, *supra,* to adopt and approve all that was said therein, but only that it supported the precise point to which it was cited. It would seem that as the quoted statute requires the County Commissioners to determine by resolutions what amount of bonds is required for such purpose," that, in deciding to issue bonds for hard-surfaced roads, as in the instant case, they might well determine, in fixing the total amount of such bonds, what amount thereof should be sold and the proceeds thereof expended during each year for a designated term of years. Might not such a course, as expressed in the adopted and published resolution have a decided and material influence upon the voters as to determining how they would cast their ballots? As was held in Stern v. City of Fargo, — N. Dak. —, 122 N. W. Rep. 403:

"The object of the notice of election, and the requirement that the amount of the bonds be stated, is to give the voters and taxpayers such information as will enable them to consider, weigh, and discuss the merits of the proposition, and to avail themselves of the opportunity so given to acquire information as to the necessity of the

proposed expenditure and the amount of the indebtedness necessary to incur to enable the city council to carry out its plans. When the notice fails to state the amount of indebtedness proposed to be incurred by the issuance of bonds, opportunity is not afforded the voters to inform themselves so as to be able to vote intelligently."

See also the well-reasoned case of Skinner v. City of Santa Rosa, 107 Cal. 464, 40 Pac. Rep. 742, 29 L. R. A. 512, which, we think, is well in point. It necessarily follows from what we have said that we are of the opinion that the bill is not wanting in equity, therefore the court erred in sustaining the demurrer thereto. The interlocutory order appealed from must be reversed, and it is so ordered, and the case remanded, with directions to overrule the demurrer to the bill. We do not wish to be understood as holding that, as the previous installment of bonds was sold in May, 1912, the installment referred to in the instant case cannot be sold until May, 1913. The adopted and published resolution does not so read. We are of the opinion that such bonds can be sold at any time during the year 1913. The authority voted was to issue four series of bonds, the first of the series to bear date the first of December, 1909, and the fourth of the series to be issued on or after, but not before, the first of December, 1912, all maturing December 1, 1939. To issue the last series prior to December 1, 1912, maturing December 1, 1939, imposes an indebtedness on the people of Duval County not authorized by their vote, and calls for an injunctive remedy when applied for by a citizen taxpayer.

Order reversed.

TAYLOR, COCKRELL AND WHITFIELD, J. J., concur.

HOCKER, J., absent on account of illness.