W. R. Bigham, Chairman, Board of County Commissioners of Sumter County, W. R. Blair, *et al,* as members of the Board of County Commissioners of Sumter County; Roy Caruthers, as Clerk of the Circuit Court and *ex officio* Clerk of the Board of County Commissioners of Sumter County, and Sumter County, v. State, *ex rel.* Ocala Brick & Tile Co.

Opinion Filed July 27, 1934.
156 So. 246.

*Himes & Himes,* for Plaintiffs in Error;

*Frank R. Greene,* for Defendant in Error.

CAMPBELL, Circuit Judge.—In a mandamus proceeding instituted in the court below, the defendant in error, State *ex rel.* Ocala Brick & Tile Company, sought to compel the respondents in the court below, as members of the Board of County Commissioners of Sumter County,

Florida, and the Clerk of said Board, to pay certain due bills or certificates of indebtedness of Sumter County, Florida, from certain moneys held by the Board of County Commissioners and alleged to be applicable to the payment of such items. The relator alleged that it was the assignee and owner of each of said due bills or evidence of indebtedness. From an order of the court below, overruling the demurrer to the amended alternative writ of mandamus, as further amended on May 27, 1932, and sustaining the demurrer to the answer or return to the said amended alternative writ of mandamus, and entering final judgment granting a peremptory writ, a writ of error was taken to this court.

There are eight errors complained of in the assignment of errors filed in this court. These may be summarized under three heads:

1st. The court erred in overruling the demurrer to the amended alternative writ of mandamus as further amended on May 27, 1932.

2nd. The court erred in sustaining the demurrer to the answer or return to such amended alternative writ, and

3rd. The court erred in entering judgment granting peremptory writ of mandamus.

The transcript of record discloses that there was an amended alternative writ filed, to which a demurrer was interposed, and that subsequently an answer or return was filed, subject to the ruling on the demurrer to the amended alternative writ. Later, on May 27, 1932, by leave of the court the amended alternative writ of mandamus was further amended, by adding paragraph 12, and by amending the prayer for mandatory relief. By stipulation between counsel, endorsed on the demurrer to the alternative writ as first amended, it was made to apply to the writ

as further amended. By like stipulation, the return or answer to the first amended alternative writ was agreed to be considered as the return or answer to the further amended alternative writ, and the relator's demurrer made to apply thereto. The pleadings having been thus submitted to the court below, the orders and judgment were made and entered as already referred to.

The amended alternative writ of mandamus as further amended, with the exhibits thereto, and the demurrers, and return or answer are too voluminous to quote in full. We shall therefore state the substance of pertinent allegations, quoting only such portions as may be necessary to an intelligent understanding of the questions to be determined.

The amended alternative writ alleges in substance that in the year 1930 the Board of County Commissioners of Sumter County, Florida, in order that the State Road Department take over certain of the public roads of the county, as state roads, determined to secure rights of way for such roads, and employed S. W. Getzen, an attorney at law, to procure such rights of way by condemnation proceedings, or otherwise. It is also alleged that certain of these rights of way were procured through condemnation proceedings, and others by securing deeds therefor from the land owners. After the rights of way had been thus secured, the compensation of the said attorney, aggregating the sum of $9400.00, is alleged to have been fixed and agreed upon between the Board of County Commissioners and the said S. W. Getzen, and the accounts of said attorney for the sum stated were approved, and ordered paid by the said Board.

It is then stated in said amended alternative writ that one J. C. Getzen, Jr., an attorney at law, appeared for and

represented certain owners of land involved in such con-
demnation proceedings, and that the firm of McCollum and·
Howell also represented certain other owners of the lands
condemned. It is alleged that the said J. C. Getzen, Jr.,
"earned and was allowed certain fees, which were in law
chargeable against, and payable by Sumter County, as a
part of the. costs and expenses of said condemnation pro-
ceedings to be borne by it, in the sum of $1450.00." And
that for like work and under the same circumstances,
McCollum & Howell, as attorneys for other owners of land
have earned and are entitled to certain fees amounting to·
$1050.00.

The amended alternative writ further shows that in such
condemnation proceedings, and other proceedings to pro-
cure such rights of way, it was necessary that the Board of
County Commissioners of ·Sumter County have abstracts
of title, and searches made of the records, of the title to·
lands included in the rights of way sought, and that one
Lloyd Talley, owner of Talley Abstract & Title Co., was
employed to furnish such abstracts of title, and make such
searches, and that the reasonable value of such services
aggregated $2425.00; that bills for such services aggregat-
ing said amount were agreed upon and approved by the
Board of County Commissioners of Sumter County.

It is also stated in the amended alternative writ that
there were not available funds in hand to pay the compen--
sation to the owners of the lands condemned for rights·
of way, within the statutory time for paying such judg--
ments, and also the accounts of said S. W. Getzen, J. C.
Getzen, Jr., McCollum & Howell, and Talley Abstract &
Title Company, but that by agreement between the Board
of County Commissioners and said attorneys and abstract
company, each of said creditors agreed to accept 66 2/3 per

cent cash payment on his account, and accept a due bill or certificate of indebtedness from the board, payable in one year, for the remaining 33 1/3 per cent. of his account. It is alleged that such settlement was made, and that the county's due bills or certificates of indebtedness, were given as follows: to S. W. Getzen for $3,222.26; to J. C. Getzen, Jr., for $485.75; to McCollum & Howell for $357.75, and to Talley Abstract & Title Company for $952.42. These due bills, or certificates of indebtedness, it is alleged were payable in one year after date, with interest at 5% per annum, "out of the first available funds obtainable by the Board of County Commissioners of Sumter County, Florida, either in Road and Bridge funds or other funds pertaining to road and bridge construction or maintenance."

These due bills are alleged to have been assigned to the relator for valuable consideration, by the respective owners and holders thereof.

The amended alternative writ further alleges that there had been certain funds aggregating about $20,000.00 belonging to Sumter County, Florida, and held for some years by the Board of Administration of the State of Florida; that this sum of about $20,000.00 was a sum of money collected by the Board of County Commissioners of Sumter County, Florida, from the surety of a road contractor who had defaulted under his contract to build certain roads in the county, and that upon the collection of same it had been turned over to the Bond Trustees of the county, and by them "inadvertently, improperly and wrongfully" turned over to the Board of Administration of the State, as a part of the sinking fund for the retirement of road and bridge district bonds. This amount, it is alleged, did not in law or in fact constitute any part of the sinking fund, and was not applicable to the retirement of road and bridge

district bonds of said county, "but was applicable by said county at all times to the construction of public roads and bridges, to the acquisition by condemnation proceedings or otherwise of rights of way for public roads and bridges and matters germane thereto."

It is set forth in the amended alternative writ that in the Fall of 1930, application was made by the Board of County Comissioners of Sumter County, Florida, to the Board of Administration of the State of Florida, for the return of the said funds amounting to about $20,000.00 to Sumter County, "for the express purpose of enabling the said county to pay the costs of the acquisition of rights of way, desired and required by the State Road Department; that upon said application and on the advice of the Attorney General of Florida, the said Board of Administration did return to Sumter County $14,979.15 out of the fund of about $20,000.00, on the express understanding and for the purpose that said money would be used by Sumter County to defray the costs of acquiring said rights of way in so far as such funds should be sufficient therefor, and that the said sum of $14,979.15, was actually used and applied by the respondent, Sumter County, acting by and through its Board of County Commisioners, in paying *pro tanto* of the costs and expenses incurred by the respondent, Sumter County, in acquiring the aforesaid rights of way."

The amended alternative writ of mandamus then alleges that the sum of $5,702.06 (the fund from which relator seeks to have its due bills paid), has been returned to said Sumter County, Florida, by the Board of Administration of the State, and that the same is in the actual custody of the respondents. That this money was returned "in pursuance of the former application therefor and upon the same understanding and for the same purpose" and, "that

the same belongs to Sumter County and constitutes the first available funds for the purpose of paying the claims now held and owned by the relator aforesaid, and is actually available for the payment of the said claim."

It is further alleged that on December 8, 1931, the relator presented its claim and demands to the Board of County Commissioners of Sumter County for payment out of said fund, and demanded their assurance that said due bills or evidences of indebtedness would be honored and paid from said fund, but that the said board refused relator's demand, and declined to give any assurance that said sum would be paid out of said fund. That a majority of the Board is opposed to the application of said fund to pay said claim, contending and asserting that they are not properly and lawfully payable therefrom.

On May 27, 1932, by permission of the court below the amended alternative writ of mandamus was further amended, by adding a paragraph numbered 12, which alleged in substance that in addition to the claims of S. W. Getzen, J. C. Getzen, Jr., McCollum & Howell and Talley Abstract Company, held by the relator, and theretofore presented to and approved by the Board of County Commissioners of Sumter County, there were likewise presented to said board and approved by them on same date, and by the same resolution certain other claims, "which were also incurred by said county in course of, and for the purpose of obtaining rights of way for the same public roads in Sumter County, as in case of relator's claims, and said sum of $5,702.08, *at all times was and is likewise applicable to the payment of said other claims.*" These additional claims are set forth in said paragraph 12, as follows:

W. T. Coleman, Sheriff's fees ........................$ 106.32
Sumter County Times, printing constructive notice
  of condemnation suit ......................... 1,084.00
F. F. Hooten, transportation of·juries ................. 85.68
Jas. W.·Giddens, Defendant Attorney fee ............ 50.25
Sumter Abstract Co., title searches to date ............ 78.73
Roy Caruthers, Clerk, suit cost and recording .... 734.32
Geo. ·E.˙ Maddox, printing ............................. 176.18

It is further alleged in paragraph 12, regarding the above ·claims, the following: "no part of which amounts and claims have been paid to said claimants and remain.due and pay-.able out of said fund of $5,702.08 to the same extent and for the same reasons as the claims of relator."

By the amendment above referred to the mandatory part ·of the amended alternative. writ asks that the respondents be· required "to pay the. relator on account of its claims aforesaid, out of the fund of $5,702.08, that proportion of said claim and each of them which the total of relator's ·claims and the additional claims listed in paragraph 12, hereof, bears to the amount of said fund to-wit: the sum of $5,702.08, or that in default thereof they and each of them appear, etc." and show cause.

The demurrer interposed to the amended alternative writ attacks the same in several particulars. It says that the allegations are uncertain. That the allegations are in-sufficient to show default in the performance of·any legal duty upon the part of the respondent. That the acts, the performance of which are sought, are not specifically al-leged. That it is·not made to clearly appear that the fund sought to be reached is applicable to the payment of the obligations described, and that the mandatory requirements of the alternative writ as amended are uncertain.

Did the court below err in overruling this demurrer? We are of the opinion that the allegations of the amended alternative writ of mandamus as further amended on May 27, 1932, fail in several respects to measure up to the requirements of good pleading in setting forth clearly such facts as would authorize the issuance of a peremptory writ.

We have held in previous cases considered by us that an alternative writ of mandamus must show a clear *prima facie* case in favor of the relator. See State *ex rel.* The Citizens' Gas Co. v. Mayor, etc., Jacksonville, 22 Fla. 21; Enterprise v. State *ex rel.* Atty. General, 29 Fla. 128, 10 Sou. Rep. 710; Mixson v. First Natl. Bank of Miami, 102 Fla. 468, 136 Sou. Rep. 258.

The allegations of the amended alternative writ fail to clearly and definitely allege facts to show the duty of the respondents, in the court below, to pay the amounts represented by the due bills of evidence of indebtedness, to J. C. Getzen, Jr., and to McCollum & Howell, as legal charges against Sumter County, Florida.

With reference to the due bill given J. C. Getzen, Jr., the amended alternative writ alleges, "That one J. C. Getzen, Jr., an attorney at law duly licensed under the laws of Florida to prcatice law in all the courts therein, was retained by, and appeared for certain of the owners of land embraced in the condemnation proceedings brought as aforesaid by or on behalf of Sumter County, and rendered professional services to the said owners, and was allowed therein certain fees for said services which were by law chargeable and were actually charged against and payable by the respondent Sumter County as a part of the costs and expenses of such condemnation proceedings to be borne by it." And, it further alleges the following: "That at said meeting of the Board of County Comissioners held

on December 20, 1930, the claim of the said J. C. Getzen, Jr., for said fees were *duly presented to and accepted and approved by said Board of County Commissioners acting for and on behalf of Sumter County, Florida, and was ordered paid."* (Italics supplied.)

Like allegations are made regarding the alleged due bill given McCollum & Howell, attorneys, as it is claimed for other owners of land. The Board of County Commissioners have nothing to do with the fixing and approving of the bills for compensation of atorneys for the defendants in condemnation proceedings; neither do they have anything to do with "allowing" such attorneys' fees. The law authorizes the attorneys' fee for the defendant in condemnation proceedings, and the jury in such proceedings fixes the amount of such fee. See Section 2283 C. G. L., 1510 R. G. S. The alternative writ as amended alleges that these attorneys for defendants were "allowed therein certain fees," but it is silent as to what authority "allowed" them. The inference to be drawn from the allegations above quoted, is that the Board of County Comissioners allowed them.

It is true that Section 1515 R. G. S., 2293, C. G. L., provides that all costs and expenses shall be paid by the county, but these costs "including reasonable attorneys' fees for the defendant," are allowed by the judgment of the court after a verdict of a jury in which a reasonable fee is fixed. The statute governing condemnation proceedings contemplates and provides that the asessment of reasonable attorneys' fees for the defendant shall be fixed by the jury, that determines the compensation to be made to the owner of the land. See Jacksonville Terminal Co. v. Blanshard, 77 Fla. 855, 82 Sou. Rep. 300. The attorney's fees for defendant's attorney is a part of the compensation to be recovered by

the owner of the land sought to be condemned, and is included in the judgment rendered under Section 1511, R. G. S., 2289 C. G. L.

If the fees claimed by J. C. Getzen, Jr., and McCollum & Howell were fixed" and "allowed" by the Board of County Commissioners, they are not legal charges against Sumter County. If they were assessed by juries and verdicts rendered therefor, they were, or should have been included in the defendant land-owners' verdicts and judgments as part of their compensation. The attorneys look to their clients, the land owners, for their fees. The land owners are compensated by the county after verdict of the jury. There is no allegation in the amended alternative writ that the owners of the condemned lands did not recover these fees as part of the compensation awarded them by the verdict of the juries in the respective cases, and the amount thereof included in the judgments rendered in the several condemnation proceedings. The allegations of the amended alternative writ fail, in our opinion, to show that these sums for which the due bills to defendants' attorneys were given should be paid by the respondent from any fund. Under the provisions of Section 1510 R. G. S., 2288 C. G. L., the verdict of the jury shall state among other things, "the compensation to be made for the property condemned *including a reasonable fee for the defendant's attorney.*"

In State *ex rel.* West v. Florida Coast Line C. & Tr. Co., 73 Fla. 1006, 75 Fla. 1006, 75 Sou. Rep. 582, we said: "If the relator in mandamus is not entitled to have the order enforced *as a whole,* motion to quash should be granted, with leave to the relator to amend." (Italics supplied.)

In the same case we held that the mandatory part of the writ of mandamus must be enforced in *its entirety,*

and when a motion to quash the alternative writ of mandamus is made, and it appears from the face of such writ that relator is not entitled to have the order enforced *as a whole,* the motion to quash should be granted.

We think that the amended alternative writ of mandamus as further amended on May 27, 1932, fails to allege facts to clearly show that the fund of $5,702.08, alleged to be held by the respondents, was applicable to the payment of the alleged obligations held by the relator. It is true that the amended alternative writ, in speaking of the availability of the said sum of $5,702.08, alleged to have been returned to Sumter County by the Board of Administration of the State, alleges: "That the return of such money to Sumter County was made in pursuance of the county's former application therefor upon the same understanding and for the same purpose. That said fund belongs to Sumter County and constitutes the first available funds for the purpose of paying the claims now held and owned by the relator aforesaid, and is actually available for the payment of said claims, etc." It is also further alleged as follows: "And the relator shows that the said money, that is, the sum of $5,702.08 just returned, constitutes the first funds *obtainable* or *obtained* by Sumter County, Florida, either in road and ·bridge funds, or any other funds pertaining to road construction or road maintenance, *within the meaning of its agreement* with relators assignors, and that the specific agreement of the respondent Sumter County, acting by and through its Board of County Commissioners, relators claim and demand aforesaid constitute a direct and lawful charge upon said fund, etc." (Italics supplied.)

The above quoted allegations fail, in our opinion, to set up any facts to warrant the mere conclusions of the re-

lator, that the fund in question is available and applicable for the payment of the claims held by it. The quoted allegations set up mere conclusions of fact and of law. The mere fact that the Board of Administration of the State was requested to return the fund alleged to have been delivered to it by the Bond Trustees of Sumter County, "inadvertently, wrongfully and improperly," so that the same might be used by Sumter County in securing rights of way for roads desired by the State Road Department; and that the moneys were returned after such request, does not by any means "ear mark" such funds as being applicable for the purpose of paying for such rights of way, unless, under the law, this fund could be appropriated for such purpose. The understanding as to the purpose of requesting the return of the fund to the county, if such there was, would not alone make the fund available.

As we view the matter, the alleged understanding as to the use to which the fund was to be applied when returned, is the only allegation of fact to sustain relator's contention that the fund was applicable to the payment of the obligations held by it. The amended alternative writ as further amended is silent as to the origin of the funds alleged to have been used by the County Commissioners, in completing roads, after contractor defaulted, and from whose surety the $20,000.00 was paid Sumter County as damages. Whether the County Commissioners completed the construction of such roads with the proceeds of county road bonds or with funds derived from direct tax or other sources, is not made to appear from the allegations of the amended writ of mandamus. It does appear, however, that for some reason, unexplained by any allegations of such writ, the $20,000.00 when collected from the surety of the contractor was turned over to the Bond Trustees of

Sumter County, Florida. This would indicate that the money used in completing such roads was the proceeds of bonds, and that the money secured from the surety was considered as principal of the proceeds of county bonds. The relator has not, by the allegations of the amended alternative writ of mandamus, made it clearly to appear that the $5,702.08 was or is, under the law, available for the payment of relator's claims. It is essential that the amended alternative writ of mandamus show by proper allegations of fact a *prima facie* right of the relator to the relief prayed. In order to do this the amended alternative writ should allege all the essential facts which show the duty and impose the *legal* obligation on the respondents to perform the act demanded of them, as well as the facts that entitle the relator to invoke the aid of the court in compelling the performance of the duty. See State *ex rel.* Sunday, v. Richards, 50 Fla. 284, 39 Sou. Rep. 152.

The plaintiff in error contends that the amended alternative writ of mandamus, as amended May 27, 1932, is demurrable on another ground, and we think their contention is correct. As we have already said, on May 27, 1932, the amended alternative writ was further amended by adding paragraph 12, and by amending the mandatory prayer. Paragraph 12 sets forth the claims of others, for certain specified sums, which it is alleged "were also incurred by said county in course of and for the purpose of obtaining rights of way for the same public roads in Sumter County as in case of relator's claims, and said sum of $5,702.08 at all times was and is likewise applicable to the payment of said other claims." The owners and the amounts of such additional claims are given in detail. The mandatory provisions of such amended alternative writ as thus amended, required the respondents, naming them,

"to pay to the relator on account of its claims aforesaid, out of the said fund of $5,702.08, that proportion of the said claims and each of them, which the total of the relator's claims and the additional claims listed in paragraph 12 hereof, bears to the amount of said fund, to-wit, the sum of $5,702.08."

It is contended by the plaintiffs in error that the above quoted portions of paragraph 12, and of the mandatory provisions of the amended alternative writ as further amended, rendered it so uncertain and indefinite as not to authorize the issuance of a peremptory writ granting the relief sought therein. In the case of Florida Cent. & P. R. Co. v. State *ex rel.* Town of Tavares, 31 Fla. 482, 13 Sou. Rep. 103, we said: "The range of action required of the respondents by an alternative writ of mandamus should be clearly, particularly and explicitly set forth in the mandatory part of such writ. The duty commanded should not be left to indiscriminate outside ascertainment *de hors* the writ." See also State *ex rel.* West v. Florida Coast Line Canal Tr. Co., 73 Fla. 1006, 75 Sou. Rep. 582; and Howell v. State *ex rel* Edwards, 54 Fla. 199, 45 Sou. Rep. 453.

In the instant case the amended alternative writ as further amended, commands the respondents to make payments on the claims held by the relator out of the fund alleged to be applicable to their payment, in that proportion which they bear to the total of relator's claims and all claims described in paragraph 12. We think the alternative writ as amended, should have alleged in definite terms the amount claimed as such proportion. The allegations as made brought in accounts claimed to be held by others, who were not parties, thus leaving the court to adjudicate such amounts as being correct when the claimants were not before the court. Then too, if the question of the absence

of necessary parties to be eliminated, a mistake in calculation might render the respondents liable for failure to pay the proper amount, or that which the relator might claim to be the proper amount. The amount commanded to be paid should be definitely alleged, and not require the respondents to ascertain such amount by their own calculations. The situation is not the same as the calcuation of interest in entering a judgment. In mandamus the respondents must be commanded to pay a fixed and definite sum, which must be fixed by the allegations of the alternative writ, before such respondents can be compelled to pay, or show cause why they have not paid.

It is further contended before us that the amendment to the alternative writ of mandamus, by adding paragraph 12, brought before the court a fund in which the relator admitted other parties, not before the court, are interested.

On several occasions we have held that a writ of mandamus will not be granted when it is evident that substantial rights, of parties not before the court, are involved. See State *ex rel.* Dixon v. Trustees of I. I. Fund, 20 Fla. 402; State *ex rel.* Sunday, v. Richards, 50 Fla. 283, 39 Sou. Rep. 152.

In the last cited case, 50 Fla. page 289 (text), we said, speaking through Mr. Justice WHITFIELD: "This court in the case of State *ex rel.* Dixon, v. Trustees, has approved the doctrine that the fact there are other claimants to land who are not parties to the proceedings, furnishes sufficient grounds for refusing a mandamus to compel the performance of an act affecting the title to land. The averment that the claims are void will not relieve the difficulty, *for the court will not undertake to adjudicate claims whether valid or not when the claimants are not parties to the suit.*" (Emphasis ours.)

It is contended by the defendant in error that the claimants, whose claims against the fund in question are alleged, in paragraph 12, to be payable out of the said fund to the same extent and for the same reasons as the claims held by the relator, are not necessary and proper parties, because, under the holdings of this court in the cases of State *ex rel.* New York Life Ins. Co. v. Curry, 104 Fla. 242, 139 Sou. Rep. 891; State *ex rel.* DuPont Ball, Inc., v. Livingston, 104 Fla. 33, 139 Sou. Rep. 360; and State *ex rel.* Gillespie, v. Carlton, 103 Fla. 810, 138 Sou. Rep. 612, the relator would have been entitled to have the entire fund appropriated to the payment of its claims. It is contended further that because relator amended its alternative writ. so as to conform to the suggestion of the respondents that the fund, if applicable to the payment of relator's claim, should be applied *pro rata* to the payment of all claims against the county accruing in the condemnation proceedings, and also consented to accept for itself the proportionate payment suggested in the return to the first amended alternative writ, that the claimants so named in said amendment have no such interest in the fund as will make them proper or necessary parties.

Probably under the law the relator, having sought to have the full fund applied to the payment of its claims, could have had such fund applied, without making the other claimants interested parties to the proceeding, but when the relator amended its alternative writ of mandamus, conceding that the parties therein named as claimants to the fund should participate therein in proportion that their respective claims bore to the total amount of claims, including those held by the relator, and consented to accept its proportionate part then these claimants became interested parties. We think the claimants, by virtue of this amend-

ment are especially interested in the determination of the amount of each of the participating claims, including those of the relator. The smaller the amount of the relator's legitimate claims, the larger would have been the proportionate share of the other claimants in the balance of the fund left to pay their conceded claims. These claimants named in paragraph 12 might have increased their proportionate share in the fund by questioning the right of the attorneys for the land owners to collect their fees as such attorneys, which, under the law, must be fixed by a verdict of a jury as a part of the compensation to the land owner.

The claimants, whose claims were thus brought before the court, were not themselves before the court, and given an opportunity to be heard as to the correctness of the amounts alleged to be due them, or as to the amount legally due the relator on its alleged participating claims. As we said in the case of State *ex rel* Sunday, v. Richards, *supra*, "This court will not undertake to adjudicate claims whether valid or not where the claimants are not parties to the suit." Under the allegations of the amended alternative writ of mandamus the court, in granting the relief prayed for, necessarily adjudicated the amount of the claims of the parties interested in the fund, when such parties were not before the court. The demurrer to the amended alternative writ of mandamus as further amended, should therefore have been sustained.

The remaining errors assigned complain of the rulings of the court below in sustaining the demurrer to the answer or return to the amended alternative writ of mandamus, and in rendering its judgment granting the peremptory writ.

From what we have said in our discussion and consideration of the demurrer to the amended alternative writ of

mandamus, it is seen that this case must be reversed. Were it not for the fact that the other errors assigned raise some questions which we think should be settled now, we would at this point simply enter judgment reversing the case, without further prolonging this opinion. However, we believe the questions raised by the demurrer to the answer or return should at this time be discussed and disposed of. The demurrer to the return to the amended alternative writ of mandamus raised certain propositions which we think have vital bearing on the right of the relator to have its claims paid from the funds in the possession of the respondents.

The answer or return to the amended alternative writ of mandamus as further amended on May 27, 1932, alleges among other things, the following: "That the fund of $5,702.08 recently returned by the State Board of Administration to Sumter County, and sought by the commands of the alternative writ to be paid and distributed to the relator in so far and in such proportion as it shall appear to be properly available, never has been, and is not now, an available fund for the purpose of paying, or lawfully subject to be applied to the payment, of the claim asserted by the relator in the alternative writ, and by no agreement of Sumter County through its Board of County Commissioners, has the relator's alleged claims been constituted a direct lawful charge, in whole or in part, upon said fund," etc.

There is also a denial in said return that the fund, or the sum of $14,979.15, referred to in the amended alternative writ, was returned to Sumter County by the State Board of Administration upon any understanding or agreement by said Board of Administration that the money, or any part thereof, would be applied to the use or purpose alleged in such alternative writ, or that the Attorney Gen-

eral advised that the money or any part thereof would be so applied. The return also denies that the respondents will devote or expend the money referred to, in whole or in part, in the payment of any debts of Sumter County not properly chargeable against or payable out of said fund. As to the source from which the disputed fund came, the answer or return alleges the following: "That heretofore, to-wit: in February, 1924, an issue of bonds by Sumter County was voted by the qualified electors thereof, at an election then held, for the purpose, and none other, of constructing nine definitely described and located public roads in said county which were fully described in the resolution theretofore adopted, for the issuance of said bonds and for the holding of said election by the County Commissioners of said county, and in the submission to the voters, which said roads were so described as follows, to-wit:" Then follows a description in full of each of the nine roads for which the bonds were voted, and the approximate amount of the bond money allotted to each road.

The return further alleges that after the bonds were voted they were issued and sold, and that the proceeds were paid to the Bond Trustees named by the Board of County Commissioners of the county. That on or about June 8, 1925, the Board of County Commissioners entered into a contract with one F. A. McKenzie to furnish a portion of the labor and materials required to construct the road for which the bonds were issued; and, contemporaneously with the making of the contract the said F. A. McKenzie, with the United States Fidelity and Casualty Company, as surety, executed and furnished to the County of Sumter a bond in the penal sum of $40,000.00, conditioned that the contractor would well and truly comply with the conditions of the contract. It is further alleged in the

answer or return that McKenzie, the contractor, before the completion of the work, breached the contract, and abandoned the work, leaving the same uncompleted and unfulfilled, and, "That thereupon the said Sumter County through its Board of County Commissioners, caused the work and the materials called for by the contract of said McKenzie to be completed, with the result that Sumter County, *out of the proceeds of said bonds* was required to expend, and did expend a sum in excess of $30,000.00 *in excess of the contract price called for by said contract, for the full completion, and furnishing of the work and the materials called for thereby,* and upon demand on behalf of said Sumter County upon the surety upon said bond, that the said County be reimbursed the excess cost for the completion and performance of said contract, the United States Fidelity and Casualty Company did pay to, and the said Board of County Commissioners did accept on or about August 9, 1927, the sum of $20,210.00 in satisfaction and release of the county's said claim against the said surety of the contractor for the non-performance of the contract." (Italics supplied.)

The answer or return then alleges that the fund referred to in the amended alternative writ of mandamus as having been paid to the State Board of Administration, was derived as thus alleged and not otherwise. "That the sum so paid and accepted by the Board of County Commissioners should have been by said Board turned over to the Trustees of said county bonds, to. become a part of the fund applicable to the completion of the building of the nine specified roads for which the bonds were issued, and no other purpose, and the construction of which said roads then was and has continued to be and now is, uncompleted and unfinished."

With reference to the claims held by the relator, and the additional claimants⸱ set forth in the amended alternative writ of mandamus, the respondents in the answer or return alleged the following: "That the claims, payment of which is sought to be coerced in whole or in part by the alternative writ, represent, as do likewise the additional claims in said writ mentioned and referred to, as to each claim, an unpaid balance of a larger amount claimed to have become due originally to the assignors of the relator, and the other additional claimants, approved as to amount by the Board of County Commissioners of said county, and which original claim represents a large sum charged in each instance for and on account of expenses in obtaining rights of way for roads in Sumter County, desired by the State Road Department, for public roads in Sumter County, which roads included State Road No. 1, extending between Center Hill and Croom, State Road No. 22, extending between Bushnell and Center Hill, and said State Road No. 70, extending between Coleman and Webster, and said last mentioned roads were, and are not, nor any one of them, among or included in the roads for which the bonds hereinbefore alleged, were voted, are not parallel to any of the roads for which the bonds were voted; constitute no part of any road for which said bonds were voted, but extend in directions, and throughout portions of said county wholly different from any of the roads for which said bonds were specifically voted and are roads in addition to those for which said bonds were authorized, and were, and are not, substituted as any change of route for any of the roads for which said bonds were issued. That although the unpaid balance claimed to be due on each of the said claims is in part a charge made in the matter of the expense of obtaining rights of way for roads including the aforesaid

roads, for which bonds were not voted, and the greater amount of each of said claims as originally made, was for the expense of obtaining the rights of way for roads not included in said bond issue as aforesaid."

The demurrer was addressed to the answer or return in its entirety. There were also demurrers addressed to different portions of the return. The court below sustained the demurrer which was addressed to the whole return.

The principal questions raised by the demurrer to the answer or return are, as stated by counsel for the plaintiffs in error, as follows: "Should the fund of $5,702.08, in the possession of the Board of County Commissioners, referred to in the alternative writ of mandamus, be treated as applicable only to the purposes for which the bonds were voted, which are referred to in the answer to the alternative writ, until these purposes have been effected?" And, "Is the fund of $5,702.08 in the possession of the Board of County Commissioners of Sumter, County, Florida, referred to in the alternative writ, subject to be lawfully applied in whole or in part, to the payment of the claims asserted by the relator in the alternative writ of mandamus?

From the parts of the answer or return quoted above it appears that such answer or return was, in part at least, a return or answer in confession and avoidance; that is, that the fund which the relator seeks to have applied to the payment of its claims, represents a portion of the principal of the proceeds of bonds issued by Sumter County, after the qualified voters in an election duly called had authorized, for the purpose of building certain public roads designated and described in the resolution calling the election for bonds. That the fund in controversy in this proceeding is a portion of a larger amount, which was collected from the surety of a defaulting contractor for the building

·of certain bond issue roads, which the Board of County Commissioners had to complete with the proceeds of bonds in excess of the contract price with the contractor for a ·completed road.

As a further defense it is alleged, as has been seen, that the claims held by the realtor are, if otherwise legal charges against the county for expenses incurred in condemnation of rights of way for public roads, many of which were not included in the roads described in resolution calling the bond election, and for the building of which the bonds were voted. It is alleged that the respondents are unable to determine the exact percentage of the expense incurred for condemnation of roads included in the bond issue.'

From the allegations of fact as set forth in the answer ·or return, and admitted as true by the demurrer, it is clear that the items represented in the relator's claims included ·expense incurred in securing rights of way for roads not among those for the building of which the bonds were issued. If the fund referred to in the amended alternative writ of mandamus is found to be in fact a portion of the principal of the bond issue, then it devolved upon the relator to ,show the items, if any, which were incurred on the bond issue roads.

Did the fund, amounting to $5,702.08, represent a part of the principal of the county road bond money? Was it a part of the principal of the road bond money, which could not be diverted to another purpose without legislative authority?

It is contended by the defendant in error that the money paid Sumter County by the United States Fidelity and Casualty Company, the surety of the defaulting road contractor, was not the bond money, but was money belonging to Sumter County; it being for damages, or to reim-

burse it for money expended in completing the road, after the contractor defaulted.

Under the statute the bond trustees were the custodians of the proceeds of the sale of the road bonds, and of the proceeds of the moneys derived from levies for the sinking fund. They disbursed the proceeds of the sale of the road bonds, upon the warrants or orders of the Board of County Commissioners. The trustees had, it is true, paid from the proceeds of the sale of the bonds the money necessary to complete the roads, in a sum, it is alleged, exceeding $30,000.00, over and above the amount required by the contract in default. According to the allegations of the answer or return to the alternative writ, over $20,000.00 of the money thus expended was returned. While the money paid the county by the surety on the contractor's bond, as a refund on the sum expended, in completing the road, was not, technically speaking, money actually derived from proceeds of the sale of bonds, it did in our, opinion, substitute the proceeds of the bonds paid out of the original proceeds, upon orders of the Board of County Commissioners, over and above the amount of the bond money that would have been paid out if the contractor had completed his contract. It is alleged in the answer or return that "the said Sumter County, through its Board of County Commissioners, caused the work and the materials called for by the contract of F. A. McKenzie, to be completed, with the result that *out of the proceeds of said bonds* was required to expend a sum in excess of $30,000.00 in excess of the contract price called for in the contract, etc."

Should not the $20,210.10, which was paid in satisfaction of the $30,000.00 of the proceeds of the road bonds, be considered and held to be a part of the principal of the proceeds of the bonds? We think it should. If the con-

tract had not been breached there would, according to the allegations of the answer or return, have remained the sum of over $30,000.00, of "the proceeds of the sale of the bonds," for use in the necessary completion of the roads for which the bonds were voted, and issued, or, if not so needed, for such other purpose as the Legislature might by law direct.

The $20,210.00 was not a sum collected for damages done to a road already constructed with bond money and turned over to the county or State Road Department, but it was paid as a refund for *bond money* used in the necessary completion of a road being built with bond money, and that had been left uncompleted by a defaulting contractcor.

It is true that the allegation in the return as follows: "And the construction of which said roads was, has continued to be, and now is uncompleted and unfinished," is a conclusion of the pleader, as to the need of the fund in question to complete the bond issue roads. However, this defect in the pleading becomes unimportant and harmless when from the other pertinent allegations, properly plead in the return, facts are set up showing that the fund, being the principal of the proceeds of bonds, could not have been applicable to pay the relator's claims, except by legislative action, even if the bond issue roads have been completed. See Oven v. Ausley, 106 Fla. 455, 143. Sou. Rep. 588; Whitner v. Woodrull, 68 Fla. 465, 67 Sou Rep. 110; L'Engle v. Holmes, 65 Fla. 179, 61 Sou. Rep. 320; Chase v. Orange County, 81 Fla. 237, 87 Sou. Rep. 770.

It is contended by the defendant in error that Chapter 8553, Laws of Florida, Acts 1921, gives legislative authority for the use of the fund in question in thec ondemnation and purchase of rights of way for State roads. It is further contended that, under the provisions of Chapter 15659,

Acts of 1931, the fund is made applicable for State road purposes. We do not think either of these contentions is tenable. It was not, in our opinion, contemplated or intended by these laws to authorize the use of money, raised by the issue of bonds for designated roads, of the proceeds thereof, for other or different roads, without authority given by the Legislature specifying the use to which it may be put.

In the case of Oven v. Ausley, *supra,* we were considering the question involving the disposition of the proceeds of road bonds remaining after the completions of the roads for which the bonds were voted, and we held as follows:

. "County bonds issued and sold under statute as called into effect by county commissioners' resolution and election held thereunder, constituted a contract enforceable by mandamus."

"Where resolution for issuance of bonds designating road on which proceeds shall be used, county commissioners could. not direct *unexpended balance* to another road." (Italics supplied.)

. We find the fund of $5,702.08 is an unexpended balance of the proceeds of the bonds voted to be used on the roads specified and described in the return, and that the efforts of the former Board of County Commissioners of Sumter County to appropriate such fund, or any part thereof, to apply toward paying any items of expense on other and different roads are unauthorized. The Legislature alone has the authority to provide for the disposition of this unexpended balance, for any purpose other than that authorized by the voter at the bond election. There has been no valid act of the Legislature of Florida authorizing the use of this unexpended balance to pay the claims held by the relator.

We are not unmindful that after the judgment of the court below was rendered, and while the writ of error from such judgment has been pending before us, there was an attempt made by the Legislature of Florida, at its 1933 session, in the passage of Chapter 16699, Laws of Florida, Senate Bill No. 734, to affirm the judgment of the Circuit Court in this case. By Section 1 of Chapter 16699, it is sought to ratify and make valid all bills and accounts for services rendered by various parties in obtaining rights of way for state roads by condemnation or otherwise, approved by the Board of County Commissioners of said Sumter County. The said bills and accounts being under the provisions of this Section, "enacted into law, as true and outstanding indebtedness and obligations of Sumter County, Florida."

Section 2 of Chapter 16999, *supra,* undertakes to "confirm," "affirm" and "declare" the judgment rendered in this case by the court below on May 30, 1932, and declared to be law in this cause of action, and also provides that, "This act be made a final order and determination of the foregoing cause of action."

Section 1 of Chapter 16999, Special Acts 1933, *supra,* is clearly void and unconstitutional. The subject matter dealt with in said Section 1 is not stated or embraced in the title of the Act as required in Section 16, Article III of the Constitution of Florida.

So much of Chapter 16999, Special Acts 1933, as undertakes to "confirm" or affirm" the judgment in this case rendered in the court below is clearly unconstitutional and void. It is clearly an effort upon the part of the Legislature to exercise judicial powers, contrary to the provisions of Article II, and of Section 5 of Article V of the Constitution of Florida. See Ponder v. Graham, 4 Fla. 23;

Trustees of Internal Imp. Fund, v. Bailey, 10 Fla. 238; Ruff v. Georgia S. & F. R. Co., 67 Fla. 224, 64 Sou. Rep. 782; Ex Parte Taylor, 68 Fla. 61, 66 Sou. Rep. 292, Ann. Cas. 1916A 701; State v. Aetna Casualty Surety Co., 84 Fla. 123, 92 Sou. Rep. 871, 23 A. L. R. 1262. Burr, et al., v. Jacksonville Terminal Co. 90 Fla. 721, 108 So. 576; Thursby, et al., v. Stewart, 103 Fla. 990, 138 So. 742.

Chapter 16999, Laws of Florida, Special Acts of 1933, is invalid and void. It cannot operate as either affirming the judgment of the court below in this case, or in making the relator's claims a legal charge on the $5,702.08 fund.

Unless it can be alleged and proven that the claims held by the relator's assignors were for expenses incurred in condemnation proceedings for rights of way for roads described in the resolution calling for the issuance of the county road bonds, of which we hold the fund in question is of the proceeds, the relator cannot enforce the payment of its claims from such fund. We hold therefore that the court below erred in its order sustaining the demurrer to the return or answer to the amended alternative writ of mandamus, and also in entering jurgment granting peremptory writ of mandamus.

The case is reversed and remanded for such further action as may be taken in the court below not inconsistent with this opinion.

WHITFIELD, ELLIS, BROWN and BUFORD, J. J., concur.

DAVIS, C. J., disqualified.

TERRELL, J., not participating.